Lowell MUSICK and Sharlene Musick, et al., Plaintiffs-Appellants,

v.

Gene BURKE, Burke Vending and Catering Corporation, et al., Defendants-Appellees.

No. 89-55310.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1990.

Decided Sept. 7, 1990.

Michael G. Portner, Los Angeles, Cal., for plaintiffs-appellants.

James L. Seal, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendants-appellees.

Before HUG and TROTT, Circuit Judges, and JENSEN,[*] District Judge.

JENSEN, District Judge:

In this action alleging federal antitrust and racketeering law violations and pendent state law tort claims, the individual plaintiffs[1] appeal the grant of summary judgment in favor of defendants[2] (collectively referred to as "Burke Vending") and dismissal of the pendent state law claims for lack of jurisdiction in the district court. The issues are (1) whether plaintiffs have demonstrated that Burke Vending's activities have an effect upon interstate commerce sufficient to come within the scope of either federal antitrust laws or the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); (2) whether even if such effect were demonstrated, defendants possess

---

[*] The Honorable D. Lowell Jensen, United States District Judge for the Northern District of California, sitting by designation.

[1] The plaintiffs are Lowell Musick and Sharlene Musick, dba Chow Biz; Tom Manus; Cheryl Tombaugh; and George Parlee. All are citizens of California engaged in the business of commercial catering in the Santa Clarita Valley area of Los Angeles County.

[2] The named defendants are Gene Burke, president and major shareholder of corporate defendant Burke Vending and Catering Corporation, a California corporation; David C. Smith; Lafayette Smith; Phil Smith; Rafael Espinoza; Barry Cisneros; David Manning; Don Ternario; Don Wheeler; Orlando Rivas; Peter Limon; Marco Lefferman; Edward Corner; John Sheehy; Steve Sanchez; Jane Collier; Mark Sullivan; and Derrick Kroll. Corporate defendant Michael's Catering is alleged to be a California corporation but is identified by defendants as a dba of Burke Vending and Catering Corporation. The individual defendants are alleged to be agents or employees of each other.

sufficient market power to render their activities unlawful under the antitrust rule of reason; and (3) whether the district court erred in finding that defendants had committed no acts of extortion or intimidation against plaintiffs as competitors or prospective witnesses. We affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Complaint

This dispute concerns alleged antitrust and racketeering law violations in claimed acts of violence and extortion by Burke Vending against its competitors, plaintiffs/appellants, in the mobile catering service industry in the Santa Clarita Valley area of Los Angeles, California. Plaintiffs allege that during the period from 1985 to 1988 each of them was threatened and harassed by employees or agents of Burke Vending while attempting to serve customers at various business locations throughout the Santa Clarita Valley area, and that Burke Vending engaged in price discrimination and entered into agreements to sell goods on the basis of refusal to use goods of its competitors.

The Complaint alleges that the purpose of this harassment, unlawful price discrimination, and agreement not to use goods of competitors was to restrain competition in the market area and obtain a monopoly, all in violation of the Sherman Act, 15 U.S.C. §§ 1, 2; the Wilson Tariff Act, 15 U.S.C. § 8 et seq.; the Clayton Act, 15 U.S.C. §§ 14, 15; and the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13 et seq. The threats and harassment were further alleged to have amounted to a pattern of racketeering activity conducted for the benefit of defendant Gene Burke's mobile catering business,[3] in violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO"). Pendent state law tort claims were also asserted for interference with business advantage, assault and battery, and intentional infliction of emotional distress.

### B. Disposition in the District Court

In the district court, defendants brought motions for summary judgment against each of the federal claims asserting lack of jurisdiction, in that defendants' activities were neither in commerce nor had an effect on interstate commerce as required under the statutes. Defendants also moved for dismissal of the state law claims for lack of pendent jurisdiction, should summary judgment be granted.

The district court granted the motions for summary judgment on the federal law claims and adopted defendants' proposed findings of fact as uncontroverted facts of the action. The district court found that defendants' activities were wholly local, without effect on interstate commerce; and that even if federal jurisdiction existed, defendants did not have sufficient market power to render their conduct unlawful under the rule of reason.

As to the RICO claim, the district court found that Burke Vending's activities were local and had only an incidental effect on interstate commerce. The district court further found that even if the jurisdictional effect on interstate commerce existed, plaintiffs had failed to show evidence of any predicate acts for purposes of establishing RICO liability. Although it was not a necessary basis of summary judgment, the district court found that no employee or lessee of Burke Vending had engaged in extortion, intimidation or retaliation against plaintiffs or their witnesses. Finally, having granted summary judgment for defendants on the federal claims, the district court dismissed the state law claims for lack of pendent jurisdiction, without prejudice to bringing these claims in state court.

For the reasons set forth below, the panel affirms the grant of summary judgment and dismissal of the pendent state law claims for lack of jurisdiction.

### C. Facts

The parties to this action are each engaged in the business of commercial mobile

---

3. Burke Vending and Michael's Catering are alleged to be the enterprises benefitting from the pattern of racketeering activity alleged in the RICO claim.

catering in the Santa Clarita Valley area of Los Angeles County. Their operations include driving catering trucks to businesses and construction locations throughout the area to sell a variety of prepared food or food products, snacks, drinks, and other products to employees at those business or construction sites. The products are purchased wholesale from local distributors who obtain many products from out-of-state manufacturers and suppliers, and are then resold at retail prices to the employee-consumers. The catering trucks the businesses use are assembled and customized from standard parts, some of which are manufactured outside of California.

Defendant Burke Vending owns 18 catering trucks, 3 of which are driven by employees and 15 of which are leased to independent operators who also purchase their products from Burke Vending for resale. Plaintiff Lowell Musick operates four to five catering trucks in the Santa Clarita Valley area, with a total annual business volume of approximately $800,000. Musick asserts that $500,000 of his annual sales volume is derived from sales of products imported from out-of-state. Burke Vending asserts that all of its products are purchased from local distributors. No figures are available for the volume of business Burke Vending does per year, nor the amount of that business that is derived from products shipped in interstate commerce. Plaintiffs also offer no figures for the number of catering trucks or volume of business operated by the other individual plaintiffs.

While the Santa Clarita market area is approximately 25 miles from the nearest sizeable city, there are no geographic barriers to competition from outside the area. Within the market area there are in addition to catering trucks, fast food restaurants and convenience stores which offer substantially the same products as are offered by the parties' mobile catering services. The only difference among these businesses is that the mobile catering services deliver the products directly to the customers' worksites, while employees would have to leave their worksites to reach the fixed distribution outlets. Plaintiffs assert that it is impossible for these employees to leave their worksites during the day but offer no supporting evidence on this point.

In a series of declarations submitted in opposition to the motions for summary judgment, plaintiffs allege that certain Burke Vending agents, defendants Lafayette Smith, David Smith and Don Wheeler, would follow them to worksites and forcibly interfere with their attempts to serve customers. This forcible interference included verbal threats and orders to leave, blocking customer access to plaintiffs' trucks with their own vehicles, throwing nails and other debris in the paths of plaintiffs' trucks, and at least one incident of physical assault. Non-forcible interference was also described, in the form of following plaintiffs to worksites and giving food and other products away to undercut plaintiffs' sales at those sites. Plaintiffs allege that they and their customers were placed in fear by the nature and manner of defendants' activities. Their declarations also support an inference that defendants suggested this harassment would cease if plaintiffs abandoned their attempts to service the locations at which the incidents occurred. At least three of the plaintiffs state in their declarations that they abandoned one or more service locations as a result of the harassment activities.

Defendant Gene Burke stated in his declaration in support of the motions for summary judgment that he had no knowledge of acts of violence or intimidation by his employees, and that such acts would be contrary to Burke Vending policies.

## II.  JURISDICTION OF ANTITRUST CLAIMS

### A.  Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law."

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," then "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *'specific facts* showing that there is a genuine issue for trial.'" *T.W. Electric Service, Inc. v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)) (emphasis in original).

■ Plaintiffs opposing summary judgment may not rest on their pleadings. Fed. R.Civ.P. 56(e). Although reference is made to the moving party's "burden" under this rule, Rule 56 places no evidentiary burden on a moving defendant beyond that which is required for him to prevail at trial. Therefore, while it is incumbent upon the adverse plaintiff to offer evidence sufficient to raise a genuine issue of fact on an issue on which the plaintiff has the burden of proof, the moving defendant need provide nothing more than a reference to those materials on file in the case which support the movant's belief that there is an absence of any genuine issues of material fact.

■ The district court's grant of summary judgment is reviewed de novo. *Kaiser Cement*, 793 F.2d at 1103; *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir.1985). When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party. *T.W. Electric*, 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The Court of Appeals applies the same standard upon review. *Kaiser Cement*, 793 F.2d at 1103; *Diaz v.*

*American Telephone & Telegraph*, 752 F.2d 1356, 1362 (9th Cir.1985).

■ Summary judgment may issue "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S.Ct. at 2552. The standard for judging either a defendant's or plaintiff's motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### B. Jurisdictional Reach of Federal Antitrust Law

#### 1. Statutory Requirements.

■ The Sherman Act makes unlawful combinations in restraint of interstate commerce. 15 U.S.C. § 1. Attempts to monopolize any part of interstate trade or commerce, whether alone or in a combination or conspiracy, are also unlawful. 15 U.S.C. § 2. Thus involvement of interstate commerce in a defendant's activities is a jurisdictional requirement to actions filed under the Sherman Act. *E.g., McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980) (considering whether local real estate brokerage activities have an effect on interstate commerce sufficient to satisfy the jurisdictional element).

■ Before proceeding with our consideration of the reach of the Sherman Act, however, we note that the Wilson Tariff Act, the Clayton Act and the Robinson–Patman Act each contain a more stringent jurisdictional requirement, in that the defendant must be alleged to be itself engaged in interstate or import commerce. *See Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974); 15 U.S.C. §§ 8, 13, 14.

Appellant makes no attempt to show that Burke Vending is in any way engaged in interstate commerce; indeed, to the extent that Burke Vending purchases products and truck parts manufactured out-of-state, it obtains such products and parts strictly from local distributors. Therefore, as an initial matter, the grant of summary judgment as to the Fourth and Fifth Causes of Action, for violation of the Clayton Act and Robinson–Patman Act, must be affirmed.

### 2. Effect on Interstate Commerce Under the Sherman Act.

As the power of Congress to regulate interstate commerce reaches beyond activities actually in commerce to those local activities which substantially affect interstate commerce, so the reach of the Sherman Act is correspondingly broad. *McLain*, 444 U.S. at 241, 100 S.Ct. at 508. Congress intended the Sherman Act to be "as inclusive as the constitutional limits of Congress' power to regulate commerce." Report of the Attorney General's National Committee to Study the Antitrust Laws 62 (1955), *quoted in Rasmussen v. American Dairy Ass'n*, 472 F.2d 517, 526 (9th Cir.), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973).

■ In determining jurisdiction under the Sherman Act, the focus of the inquiry is the defendant's business activities. *Western Waste Serv. v. Universal Waste Control*, 616 F.2d 1094, 1097 n. 2 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980) (citing *McLain, supra*). Appellants must make a showing of a substantial effect on interstate commerce generated either by appellees' general business activities, *McLain*, 444 U.S. at 242, 100 S.Ct. at 509, or by the alleged antitrust violations themselves, which provide "a strong indicator that the defendant's business has an interstate impact." *Western Waste*, 616 F.2d at 1097; *see also Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 744, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976) (hereafter *Rex Hospital*) (allegation that defendant's interference with plaintiff's expansion plans sub-

stantially affected interstate commerce sufficient to meet jurisdictional requirement).

To make this showing appellants must first identify the relevant aspect of interstate commerce; it is not sufficient to presume an interrelationship of the local activity to some unspecified aspect of interstate commerce. *McLain*, 444 U.S. at 242, 100 S.Ct. at 509. Then the appellants must demonstrate that appellees' local activity has "an effect on some other appreciable activity demonstrably in interstate commerce." *Id.* This effect must be, "as a matter of practical economics ... not insubstantial." *Id.* at 246, 100 S.Ct. at 511 (and citations therein); *Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1291 (9th Cir.1981).

■ Whether the defendant's "activities sufficiently affect interstate commerce to create Sherman Act jurisdiction is a highly fact-based question calling for common sense judgment." *Mitchell v. Frank R. Howard Memorial Hosp.*, 853 F.2d 762, 765 (9th Cir.1988), *cert. denied*, 489 U.S. 1013, 109 S.Ct. 1123, 103 L.Ed.2d 186 (1989); *see also Rasmussen v. American Dairy Ass'n*, 472 F.2d 517, 526 (9th Cir.), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973) ("In this area perhaps more than in most, each case must turn on its own facts."). Applying such common sense judgment means that while no specific dollar amount need be alleged and a plaintiff may show aggregate effects on commerce of defendant's activities, the alleged effect must still be considered in proportion to the parties' businesses as a whole.

In *Rex Hospital, supra,* the Supreme Court held that defendant's activities had a sufficient effect on interstate commerce where they would, if successful, (1) prevent millions of dollars in construction funding from out-of-state sources from flowing to plaintiff's hospital; (2) reduce plaintiff's purchases of out-of-state supplies and its revenues from out-of-state insurance companies by "thousands or perhaps hundreds of thousands of dollars;" and (3) reduce management fees plaintiff would pay to its out-of-state corporate parent. 425 U.S. at

744, 96 S.Ct. at 1852. The Court held that this combination of factors created a sufficient allegation of effect on interstate commerce to satisfy the Sherman Act jurisdiction requirement. There is no indication in *Rex Hospital,* however, that any one of these factors would have been sufficient on its own.

In *Burke v. Ford,* 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967), the Supreme Court found that state-wide market division by liquor wholesalers in Oklahoma would necessarily affect interstate commerce, because Oklahoma had no in-state liquor distillers and therefore all of the liquor in the state was supplied from outside the state. This single fact necessarily meant that any reduction of competition among wholesalers within the state would have a direct effect on out-of-state suppliers. *Id.* at 321–22, 88 S.Ct. at 444.

The Ninth Circuit held that a defendant's business activities, both generally and those specifically alleged to have an anticompetitive effect, satisfied the jurisdiction requirement in *Western Waste, supra.* That case involved competition between waste disposal businesses in the Phoenix, Arizona, market. Plaintiff Western Waste Service System alleged that defendant Universal Waste Control provided waste disposal services substantially below cost and conspired with other competitors, in order to drive Western Waste from the waste disposal business in the area and obtain a monopoly. 616 F.2d at 1095. The district court granted a motion to dismiss for lack of jurisdiction, relying on the holding of *Sun Valley Disposal Co. v. Silver State Disposal Co.,* 420 F.2d 341 (9th Cir.1969), that a wholly local garbage disposal business which supplied its business with equipment from out of state remained a local activity not subject to Sherman Act jurisdiction. *Id.* at 343.

The Ninth Circuit reversed, finding *Sun Valley* overruled by *McLain* to the extent

that it required a plaintiff to show that the effect of defendant's alleged antitrust violation, rather than defendant's business activities as a whole, had the necessary effect on interstate commerce. *Western Waste,* 616 F.2d at 1098. However, as to *Sun Valley* 's holding that purchase of out-of-state equipment was inadequate by itself to allege facts supporting federal jurisdiction, the *Western Waste* Court did not overrule this holding but rather found it factually distinguishable from the case before it. While the *Western Waste* parties' total out-of-state purchases amounted to almost $500,000 in the most recent year, the Court relied on the following additional facts to determine that a sufficient allegation of jurisdiction was made: (1) defendant's direct restraint of interstate commerce by using its market power to have plaintiff's dealership of out-of-state garbage compaction equipment cancelled; (2) defendant's business activity of providing scrap materials to brokers for shipment out of state; and (3) defendant's financing of its equipment purchases with funds borrowed from its out-of-state corporate parent. 616 F.2d at 1098–99.[4] These additional factors were found to constitute "material differences" between the facts of *Western Waste* and those of *Sun Valley. Id.* at 1099.

■ Therefore, there remains undiminished authority in the Ninth Circuit that a showing of purchase of supplies and equipment from out of state, *by itself,* is insufficient to identify a relevant aspect of interstate commerce substantially affected by an antitrust defendant's business activities. Even the broadest statement of Sherman Act jurisdiction to be found in the Ninth Circuit, *Rasmussen v. American Dairy Ass'n,* 472 F.2d 517, 526 (9th Cir.), *cert. denied,* 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973), acknowledges that the reach of federal jurisdiction is limited when local businesses merely purchase some

---

**4.** On this last fact, compare *Western Waste* with *McLain, supra,* 444 U.S. at 245, 100 S.Ct. at 510–11 ("appreciable amount" of hundreds of millions of dollars involved in subject real estate market's financing was obtained from out-of-state lenders) and *Rex Hospital, supra,* 425

U.S. at 744, 96 S.Ct. at 1852 ("large portion" of multimillion dollar planned expansion by plaintiff to be financed by out-of-state lenders and management fee paid by plaintiff to out-of-state corporate parent).

business inventory and equipment from the stream of interstate commerce.

*Rasmussen* dealt with the effect on interstate commerce of interference with sales of a filled milk product which was processed and sold entirely within the State of Arizona. 472 F.2d at 524–25. In holding that sales of the filled milk were the end of a line of commerce leading from outside the state through the in-state processor to in-state consumers, the Ninth Circuit focused on the fact that the nonfat dried milk and all the other ingredients used in processing the product, except for local water, came from out of state: "Thus, for all practical purposes, the out-of-state ingredients *are* [the filled milk product] ... [I]n economic terms [the filled milk] consists almost wholly of ingredients that move in interstate commerce." *Id.* at 525 (emphasis in original). Significantly, on the facts before it, the Court could be certain that the ingredients themselves had traveled in commerce, and were not merely articles of a type inferentially found in commerce. *Id.* Thus the case closely resembled *Burke v. Ford*, discussed *supra*, in turning on the necessary impact on out-of-state suppliers of interference with wholly in-state businesses.

Certainly defining a product as "in commerce" even though it never leaves the state, due solely to its composition of out-of-state ingredients, offers a very broad rule if generally applied. Therefore, the *Rasmussen* Court sought to limit the application of its holding when applied in other factual situations. *Id.* at 526. Recognizing both the fact-reliant nature of each case involving effects on commerce and the limits of federal jurisdiction, the Court harmonized the holding in *Sun Valley:*

> Since every enterprise, however localized, inevitably has some effect, however remote, on the flow of commerce among the states, some "localness," "remoteness," or "de minimis" factor must intervene or federal regulation is boundless.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> ... *Sun Valley Disposal* involved local businesses using supplies drawn from the stream of interstate commerce. We

recognized that interference with those businesses inevitably had some interstate effect. We held, nonetheless, that this effect was "incidental," and did not justify federal regulation of competitive restraints imposed on businesses that were "wholly local in character." *See Sun Valley Disposal Co. v. Silver State Disposal Co.,* [ ] 420 F.2d at 343.

472 F.2d at 526 [footnote omitted].

■ It appears that the case before the panel today describes exactly that sort of incidental effect on interstate commerce which does not warrant federal intervention. It is undisputed that the parties conduct their catering services in one limited area of Los Angeles County, serving local businesses and their employees. Appellants base their claim of effect on interstate commerce on the sole fact that a majority of the products they purchase for resale are drawn from interstate commerce, as are some of their truck parts. Appellants also ask that we infer that the same must be true for Burke Vending, as its business is so similar to appellants'.

As the above discussion shows, this single factor, i.e., equipment and supplies drawn generally from the stream of interstate commerce, is qualitatively insufficient to establish Sherman Act jurisdiction. Furthermore, assuming arguendo that some showing of this type could be sufficient, the amount of interference with commerce identified by appellants is de minimis. Even viewing appellants' evidence in the light most favorable to them, it is difficult to perceive, "as a matter of practical economics," any substantial impact on interstate commerce of Burke Vending's alleged interference with appellants' sales of out-of-state goods.

Appellant Lowell Musick states that his business makes sales of approximately $500,000 per year in goods ultimately drawn from out-of-state. The other appellants do not offer evidence regarding the extent of their sales of goods from out-of-state. There is no evidentiary showing that Musick's business in the Santa Clarita Valley area has been reduced or eliminated as a result of Burke Vending's conduct,

and therefore it is virtually impossible to assess the impact on interstate commerce of Burke Vending's activities. Other appellants have stated that they quit or reduced selling in the Newhall (Santa Clarita) area as a result of the violence and threats directed against them, but they do not indicate the geographical extent of the limitations on their business, nor the resultant effect on their sales of out-of-state goods.

While "jurisdiction [is not] defeated in a case relying on anticompetitive effects by plaintiff's failure to quantify the adverse impact of defendant's conduct [citations]," *McLain, supra,* 444 U.S. at 243, 100 S.Ct. at 510, plaintiff's evidence must at least support an inference that some quantifiable effect on commerce of defendant's intended interference with plaintiff's business has occurred. The record here does not support such an inference, because there is no indication that appellants have been disabled in any way from selling their out-of-state goods in the Santa Clarita Valley. Certainly the conduct of Burke Vending's agents, if proved, is wrongfully anticompetitive and rightfully subject to condemnation; however, even vicious anticompetitive activity is beyond the reach of the Sherman Act if it is wholly local in character.

Therefore, the district court properly found that appellants had failed to raise a genuine issue of material fact that Burke Vending's activities affect interstate commerce as a matter of practical economics. In view of our determination that appellants failed to make the necessary showing as to jurisdiction, we need not reach the question of the market power of Burke Vending. The grant of summary judgment as to the First, Second and Third Causes of Action under the Sherman Act is affirmed.

### III. JURISDICTION UNDER RICO

██ To prevail on a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), plaintiffs must demonstrate that the enterprise which is involved in or benefits from the racketeering activity is one engaged in, or having an effect on, interstate commerce. *United States v. Rone,* 598 F.2d 564, 573 (9th Cir.1979), *cert. denied sub nom. Little v. U.S.,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); 18 U.S.C. § 1962(c). This nexus may be "minimal," but constitutes part of plaintiffs' burden to prevail in this action. *Id.* Specifically, the effect on commerce must be shown. *United States v. Bagnariol,* 665 F.2d 877, 892 (9th Cir.1981), *cert. denied sub nom. Walgren v. U.S.,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). It is not necessary for plaintiffs to demonstrate that the predicate acts themselves had an interstate effect. *Rone,* 598 F.2d at 573; *Bagnariol,* 665 F.2d at 892.

██ As discussed above, the jurisdictional reach of the Sherman Antitrust Act extends to the constitutional limits of Congress' power to regulate interstate commerce. *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); *Western Waste, supra,* 616 F.2d at 1096. Therefore, we are persuaded that a "minimal" interstate nexus to establish jurisdiction under RICO can be no less than that required for the Sherman Act. That is to say, RICO jurisdiction ends where local activities have incidental effects on interstate commerce, exactly at the point where Sherman Act jurisdiction ends.

██ The evidence of interstate effect of the Burke Vending enterprise that appellants offer for their RICO claim is identical to that offered for their antitrust claims. Even accepting that the parties all offer out-of-state goods in the amounts asserted by appellant Lowell Musick, there is no basis on which to conclude that these sales create RICO jurisdiction where they are insufficient as a matter of law to create federal jurisdiction under the antitrust statutes.

For this reason, the district court properly found that appellants had failed to raise a genuine issue of material fact that Burke Vending's activities affected interstate commerce sufficiently to invoke RICO jurisdiction, and summary judgment for appel-

lees on the Sixth Cause of Action is affirmed.

## IV. DISTRICT COURT'S FINDINGS OF FACT

In granting the motions for summary judgment, the district court issued findings of fact and conclusions of law related to each cause of action in the Complaint, although such findings and conclusions are not required on decision of a motion under Rule 56. Fed.R.Civ.P. 52(a).

In its conclusions of law, the district court found that defendants Burke Vending and Michael's Catering were neither engaged in interstate commerce nor in local activities appreciably affecting interstate commerce. Therefore, the district court concluded that defendants' activities were not subject to the jurisdiction of either federal antitrust law or federal racketeering law.

As the above discussion shows, this conclusion was correct and provided proper basis for the district court's grant of summary judgment on the antitrust and RICO claims. Because federal jurisdiction is lacking in this action, the panel notes that the district court's Findings of Fact and Conclusions of Law on the merits of this case have no precedential, res judicata, or collateral estoppel effect.

## V. CONCLUSION

The district court's finding that federal jurisdiction did not exist over appellants' antitrust and RICO claims was proper, because the record fails to provide sufficient evidence of a substantial effect on interstate commerce of either Burke Vending's anticompetitive activities or its commercial activities as a whole. Therefore dismissal of the pendent state law claims was also proper. The findings and conclusions of the district court bearing on the merits of the controversy are of no legal or precedential effect.

AFFIRMED.