**The JNC COMPANIES, an Arizona corporation, Plaintiff,**

**v.**

**Lawrence OLLASON, in his individual capacity, and Marcha Ollason, husband and wife, Defendants.**

**No. CIV. 91–265–TUC–WDB.**

United States District Court, D. Arizona.

Nov. 26, 1991.

Donald Gabriel, Tucson, Ariz., for plaintiff.

Richard Montague, Trial Atty., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER

WILLIAM D. BROWNING, Chief Judge.

Pending before the Court are two dispositive motions. They are: (1) Plaintiff's July 30, 1991 Motion for Partial Summary Judgment; and (2) Defendants' August 6, 1991 Motion to Dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6).[1] Pursuant to Rule 12(b), the motions will be treated as cross-motions for summary judgment.

## OPINION AND ORDER

In this lawsuit, JNC has sued Bankruptcy Judge Lawrence Ollason and his wife Marcha Ollason. JNC seeks damages for Judge Ollason's act of authorizing the JNC bankruptcy Trustee Fred T. Boice ("Trustee" or "Boice") to accept a *nolo contendere* plea bargain on behalf of JNC in Pima County Superior Court.

### A. *Factual Summary*

The following facts are drawn from Plaintiff's May 13, 1991 Complaint. David Randall Jenkins, as president of JNC, filed

---

**1.** Also pending is Plaintiff's July 30, 1991 Motion to Take Judicial Notice of Adjudicative Facts. Defendant does not object to the granting of this motion. *See* Defendant's October 2, 1991 Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opposition"), at 2 n. 2.

a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Arizona, Tucson Division, on September 17, 1987. Judge Ollason was assigned the case, number 87–02065–TUC–LO. On September 26, 1989, JNC was arraigned in Pima County Superior Court on various felony charges. On November 29, 1989, Boice filed in the bankruptcy court a "Notice Of Hearing On Trustee's Application For Authority To Enter Into A Plea Agreement With State Of Arizona." Boice sought Judge Ollason's approval to enter a *nolo contendere* plea, on behalf of JNC, to one count of selling securities in violation of Ariz.Rev.Stat.Ann. § 44–1841 (1987 & Supp.1991).[2]

On December 22, 1989, JNC filed its objection to Boice's Application. On December 28, 1989, Judge Ollason heard oral argument on the Application. On January 2, 1990, Judge Ollason issued a Minute Entry Order authorizing Boice to enter the plea bargain. Several months later, JNC appealed the matter by Special Action to the Arizona Court of Appeals. On August 16, 1990, Judge Roll held, *inter alia*, that:

> Because JNC, as opposed to its estate in bankruptcy, is the party to the criminal action and in light of our conclusion regarding the limitations on the Trustee's powers and duties, the bankruptcy court was without jurisdiction to decide who would represent JNC in the state criminal proceedings and could not authorize the Trustee to waive JNC's right to a jury trial.

*JNC Companies v. Meehan,* 165 Ariz. 144, 149, 797 P.2d 1, 6 (Ct.App.1990).

Based on that ruling, JNC now argues that Judge Ollason's act deprived it of the Sixth Amendment right to counsel of one's choice and right to jury trial; the Fifth Amendment right to be free from the deprivation of property rights without due process of law; the Fifth and Fourteenth Amendment rights to be free from a criminal prosecution undertaken in bad faith without a reasonable expectation of obtaining a valid conviction; the Fourteenth Amendment Due Process Clause right to the presumption of innocence; and the deprivation of such rights by a United States judicial officer in the clear absence of jurisdiction. JNC seeks compensatory, consequential, and punitive damages; taxable costs; lawful interest; and other costs and expenses including reasonable attorney's fees.

The parties agree that this case presents only questions of law. There are no disputed questions of material fact that would preclude summary judgment. *See* Defendants' Opposition, at 4; Plaintiff's October 11, 1991 Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, at 3.

### B. *Summary Judgment Standards*

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

▪ A party opposing summary judgment may not rest on its pleadings. Fed.

---

**2.** Under the plea agreement, the Trustee would represent the corporation in the pending state court criminal proceedings; the remaining charges against JNC would be dismissed; JNC would pay a $100.00 fine to the Victim Compensation Fund; any further restitution, if any, would be accomplished by the distribution of assets under the bankruptcy laws; no estate assets would be distributed to the former or current officers, directors, or shareholders of JNC without the right of the state to object and be heard on the matter; and the Trustee agreed to cooperate with the state in its investigation of JNC. Apparently, Boice indicated to the state that he did not anticipate that any JNC assets would be distributed to JNC's officers, directors, or shareholders.

R.Civ.P. 56(e). Although reference is made to the movant's "burden," Rule 56 places no evidentiary burden on the moving party beyond that which is required to prevail at trial. Therefore, while it is incumbent upon the adverse party to offer evidence sufficient to raise a genuine issue of fact on an issue on which that party has the burden of proof, the moving party need provide nothing more than a reference to those materials on file in the case that support the movant's belief that there is an absence of any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990).

■ When judging the evidence at the summary judgment stage, a district court is not to make credibility determinations or weigh conflicting evidence, and is required to view all inferences in the light most favorable to the non-moving party. *Id.*

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552).

■ The ultimate question is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence supporting the non-movant's position will be insufficient; there must be evidence from which the jury could reasonably find for the non-movant. *Id.* 477 U.S. at 252, 106 S.Ct. at 2512.

■ Finally, if the factual context makes the non-movant's claim implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushi-*

ta Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### C. *Is Judge Ollason Immune from this Action for Damages?*

This case raises the question of judicial immunity. The Court must determine whether Judge Ollason is absolutely immune for his act of authorizing the Trustee to plea bargain JNC in state court.[3] His act must be scrutinized in the context in which it arose. First, however, the Court must review the law of absolute judicial immunity.

#### 1. The law of absolute judicial immunity

Judges are "absolutely immune from damages actions for judicial acts taken within the jurisdiction of their courts." *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir.), *cert. denied*, 488 U.S. 995, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988). "Grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity." *Id.* The United States Supreme Court has held that a judge will not be deprived of immunity simply because "the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978).

■ Evil intent is not a "sufficient element for piercing judicial immunity," nor is state-of-mind a necessary element. *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 370 (9th Cir.1981). Judicial immunity applies however erroneous the act may have been, and however injurious its consequences may have been to the plaintiff. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986).

■ Simply put, absolute immunity is only overcome by nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity, or by actions that, although judicial in nature, are taken in the clear ab-

---

**3.** The parties briefed the issue of qualified immunity. After reviewing the pleadings and cases, however, the Court believes that absolute immunity will apply. Accordingly, the Court will not reach the qualified immunity arguments.

sence of all jurisdiction. *See Mireles v. Waco*, — U.S. —, —, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991).

■ An act is "judicial" when it is a "function normally performed by a judge," and the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107. In *Ashelman*, the United States Court of Appeals for the Ninth Circuit adopted an expanded version of the *Stump* test to determine whether an act is "judicial." To make this determination, a court must focus on whether: (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy revolved around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in the judge's official capacity. *Ashelman*, 793 F.2d at 1075–76. These factors "are to be construed generously in favor of the judge and in light of the policies underlying judicial immunity." *Id.* at 1076.

A "clear absence of all jurisdiction" means a clear lack of subject matter jurisdiction. *Mullis v. United States Bankruptcy Court for the Dist. of Nev.*, 828 F.2d 1385, 1389 (9th Cir.1987), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988). Jurisdiction "should be broadly construed to effectuate the policies supporting immunity." *Ashelman*, 793 F.2d at 1076. Finally, "policy considerations favor a liberal application of immunity." *Id.* at 1078.

2. Was Judge Ollason's act "judicial"?

■ To determine whether Judge Ollason's act was "judicial," the Court must analyze his act under the four-part *Ashelman* test. Under *Ashelman*, the Court must first determine whether the precise act is a normal judicial function. Clearly, the bankruptcy court regularly considers matters affecting the bankrupt's estate. Here, the proposed plea bargain was a matter affecting the estate and as such, Judge Ollason's consideration of the Application was a normal judicial function.

Second, the Court must determine whether the events occurred in the judge's chambers. JNC presents no evidence suggest-

ing that they were not. In the absence of evidence to the contrary, the Court must presume that the decision to authorize the trustee to plead was made in chambers or in open court, or both.

Third, the Court must find that the controversy revolved around a case then pending before the judge. Clearly, this controversy revolved around the pending bankruptcy insofar as the plea agreement affected, and indeed benefited, the estate.

Fourth and finally, the Court must determine that the events at issue arose directly and immediately out of a confrontation with the judge in the judge's official capacity. The evidence suggests that this dispute arose from a confrontation with the judge while he was acting in his official capacity. JNC has put forth no evidence to the contrary.

The Court finds that the *Ashelman* test is satisfied and, therefore, that Judge Ollason's act was "judicial."

3. Did Judge Ollason act in the "clear absence of all jurisdiction"?

■ believes that the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) precluded Judge Ollason's action. The Arizona Court of Appeals agreed. JNC maintains that it put Judge Ollason "on notice" of the *Younger* abstention doctrine. Because he was on notice, argues JNC, his action was taken in the clear absence of all jurisdiction. The Court finds that JNC's argument is misplaced.

In *Younger*, the United States Supreme Court held that, except in narrowly defined circumstances, a United States District Court may not enjoin a state court criminal proceeding that was already pending when the federal suit was begun. Here, Judge Ollason did not enjoin or otherwise interfere with the ongoing state-court prosecution of JNC. *Younger* raises concerns of equity, comity, and federalism. Judge Ollason's act did not raise those same weighty concerns. Moreover, even if Judge Ollason *should* have abstained, his act would only have been in excess of jurisdiction. An act done "in excess of jurisdic-

tion," however, differs from one done in the "clear absence of all jurisdiction." *See Schucker*, 846 F.2d at 1204. An act in excess of jurisdiction does not strip a judge of absolute immunity. *Id.*

Defendants argue, and the Court agrees, that the only relevant issue in the judicial immunity analysis is whether "the judicial act giving rise to the present suit involved a matter arguably within the broad scope of matters which ordinarily come before the bankruptcy courts." Defendants' Opposition, at 5. Defendants argue that:

> The question before Judge Ollason when he decided to grant that motion was the extent of the bankruptcy trustee's management powers in respect of the debtor corporation. This is plainly the kind of matter which comes before the bankruptcy courts every day.

*Id.* at 6.

The Court agrees with this analysis and finds that Judge Ollason acted within his subject matter jurisdiction. His act was not taken in the "clear absence of all jurisdiction."

## CONCLUSION

For the foregoing reasons, the Court finds that Judge Ollason is absolutely immune from this action for damages. Accordingly, summary judgment for Defendants is appropriate as a matter of law. Therefore, IT IS ORDERED that:

(1) Plaintiff's July 30, 1991 Motion to Take Judicial Notice of Adjudicative Facts is GRANTED;

(2) Plaintiff's July 30, 1991 Motion for Partial Summary Judgment is DENIED;

(3) Defendants' August 6, 1991 Motion to Dismiss is treated as a Cross–Motion for Summary Judgment and is GRANTED; and

(4) This case is DISMISSED with prejudice.