29 F.3d 630
 RICO Bus.Disp.Guide 8616
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Coskun R. ATESER; Beverly A. Ateser, his wife and the
marital community comprised thereof, Plaintiffs-Appellants,
v.
Gerald BOPP, et al., Defendants,
and
James Dickmeyer, M.D.; his wife Jane Doe Dickmeyer, and the
marital community comprised thereof; Law Law Firm
of Sinsheimer & Meltzer, Inc.,
Defendants-Appellees.
Coskun R. ATESER; Beverly A. Ateser, his wife and the
marital community comprised thereof, Plaintiffs-Appellants,
v.
Gerald BOPP, et al., Defendants,
and
Sidney Volinn, individual and in his official capacity as
U.S. Federal Bankruptcy Judge; Robert Sterling,
Defendants-Appellees.
 Nos. 92-36869, 92-36964.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 5, 1994.
Decided July 19, 1994.
 
 Before: SCHROEDER, BOOCHEVER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Coskun and Beverly Ateser appeal the dismissal for failure to state a claim of their causes of action under the criminal statutes prohibiting mail fraud, wire fraud, and bankruptcy fraud, and the dismissal by summary judgment of their RICO claims, against various attorneys. They also appeal the district court's dismissal on the grounds of judicial immunity of their similar claims against a bankruptcy judge and a bankruptcy trustee. We affirm.
 
 FACTS AND PROCEDURE
 
 3
 In 1987, Coskun and Beverly Ateser retained attorney Gerald Bopp to represent them in a state court lawsuit in Mason County, Washington. In January of 1988, Bopp and another attorney, Leland Bull, advised the Atesers that they could stay the trial in the state action by filing for bankruptcy in federal court. The Atesers filed for bankruptcy under Chapter 11 of the Bankruptcy Code on February 5, 1988. The case was assigned to Bankruptcy Judge Sidney Volinn.
 
 
 4
 On March 4, 1988, the opposing party in the state court action moved for relief from the bankruptcy stay. Judge Volinn granted the motion and the state court action went to trial in Mason County. In August 1988, the state court awarded a judgment of $325,000 against the Atesers.
 
 
 5
 Judge Volinn appointed Robert Steinberg as bankruptcy trustee for the Atesers in December 1988. The Atesers changed attorneys in April 1989, substituting James Dickmeyer of Sinsheimer & Meltzer. Pursuant to bankruptcy court orders, Steinberg sold the Atesers' residence on Lake Washington, sold another property of the Atesers' (the Hood Canal property), and approved payment of $37,800 for federal income taxes.
 
 
 6
 Steinberg then submitted a reorganization plan for payment from the bankruptcy estate of legal fees and costs. The bankruptcy court approved the plan in September 1990.
 
 
 7
 After the close of the bankruptcy case, the Atesers filed a lawsuit in federal district court in the Western District of Washington, against their initial attorneys Bopp and Bull;[1] the bankruptcy trustee, Steinberg; the trustee's attorney, Daniel Forsch (who is not named in this appeal); James Dickmeyer and the Sinsheimer & Meltzer law firm ("Sinsheimer defendants"); and Bankruptcy Judge Volinn. The Atesers filed a First Amended Complaint ("complaint") on July 13, 1992. The complaint alleged twenty-two causes of action, including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1962 (1988); mail fraud, 18 U.S.C. Sec. 1341 (1988); wire fraud, 18 U.S.C. Sec. 1343 (1988); bankruptcy fraud, 18 U.S.C. Secs. 152, 153, and 155 (1988); and seventeen pendent state claims. The gist of the complaint was that the defendants had conspired to waste the Atesers' assets in the bankruptcy proceeding. Among other demands, the Atesers asked for $10 million in special damages for lost wages and income, $40 million in general damages for emotional distress and pain and suffering, treble damages, and damages pursuant to state law.
 
 
 8
 The district court declined to exercise jurisdiction over the state claims. On September 30, 1992, the court granted the Sinsheimer defendants' motion to dismiss all but the RICO claims for failure to state a claim, and granted the Sinsheimer defendants summary judgment on the RICO claims. On November 4, 1992, the court granted Judge Volinn's and Steinberg's summary judgment motions on the grounds of judicial immunity. The Atesers appeal these judgments.
 
 
 9
 I. Causes of action under the criminal statutes
 
 
 10
 The district court dismissed the causes of action against the Sinsheimer defendants under the mail, wire, and bankruptcy fraud statutes, finding that the complaint failed to state a federal claim for relief because there was no private right of action under any of these criminal statutes. We review the district court's dismissal under Fed.R.Civ.P. 12(b)(6) de novo. Buckey v. County of Los Angeles, 968 F.2d 791, 793-94 (9th Cir.), cert. denied, 113 S.Ct. 599 (1992). Review is limited to the contents of the complaint. Id. at 794.
 
 
 11
 Whether a statute confers a private right of action where it does not specifically provide for one depends on four factors:
 
 
 12
 (i) the plaintiff must belong to the class for whose especial benefit the statute was created; (ii) the legislature must have shown an intent, either explicitly or implicitly, to create a private remedy; (iii) finding an implied cause of action must be consistent with the underlying purposes of the statute; and (iv) the cause of action must not be one that has traditionally been left to state law.... An evaluation of the other elements is not necessary if the court finds that Congress did not intend to create a private right of action.
 
 
 13
 Stupy v. United States Postal Serv., 951 F.2d 1079, 1081 (9th Cir.1991) (citing Cort v. Ash, 422 U.S. 66, 78 (1975)). It is especially difficult to find an implied civil cause of action in "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." Cort, 422 U.S. at 80.
 
 
 14
 Courts have consistently found that the mail and wire fraud statutes do not confer private rights of action. See, e.g., Wilcox v. First Interstate Bank, 815 F.2d 522, 533 n. 1 (9th Cir.1987) (Boochever, J., dissenting) (citing Ryan v. Ohio Edison Co., 611 F.2d 1170, 1177-79 (6th Cir.1979) (paucity of legislative history or any other evidence showing intent to create private cause of action under 18 U.S.C. Sec. 1341 means other Cort factors need not be addressed), and Bell v. Health-Mor, Inc., 549 F.2d 342, 344-45 (5th Cir.1977)); Napper v. Anderson, 500 F.2d 634, 636 (5th Cir.1974) (like mail fraud statute, no Congressional intent to create federal cause of action for damages under 18 U.S.C. Sec. 1343 prohibiting wire fraud), cert. denied, 423 U.S. 837 (1975). Ateser cites no contrary federal authority, nor has our research unearthed such a holding.
 
 
 15
 The bankruptcy fraud statutes are likewise criminal statutes providing criminal penalties for the fraudulent concealment of assets belonging to the estate from an officer of the bankruptcy court, 18 U.S.C. Sec. 152, embezzlement by a trustee in bankruptcy, 18 U.S.C. Sec. 153, and agreements between parties in interest to fix fees or other compensation, 18 U.S.C. Sec. 155. Their language does not evince an intent to create a civil action for damages, and the legislative history of the provisions does not demonstrate that such actions were contemplated.
 
 
 16
 The Atesers do not address the factors in Cort or discuss legislative intent or purpose. In fact, they do not even engage in any analysis of whether or why a private right of action exists under these particular statutes. Instead, they argue that dismissal of their civil action denies them their constitutional right under the first amendment to petition the government for redress of grievances. According to the Atesers, every federal criminal statute implicates their constitutional rights, and because Congress cannot do away with a citizen's right to petition for enforcement of a constitutional right, they are entitled to sue under those statutes.
 
 
 17
 The Atesers' logic would create an automatic private right of action under every criminal statute. As the district court stated: "Th[is] is a novel argument but it is not one, in my judgment, that has legal or constitutional support." See Gordon v. Heimann, 514 F.Supp. 659, 661 (N.D.Ga.1980) (right to petition does not imply duty of government to act to redress every grievance). The district court did not err in dismissing the mail, wire, and bankruptcy fraud causes of action.[2]
 
 
 18
 The Atesers also claim they should have been allowed to amend their complaint. Fed.R.Civ.P. 15(a) requires a plaintiff to ask for leave to amend, following one amendment as of right. The Atesers had already amended the complaint once, and did not request leave to file a second amended complaint. Thus, they are in no position to object in this court. Even if they had, it would have been within the court's discretion to deny the request. In any case, any amendment could not have cured the fatal defect of the lack of a private right of action under the criminal statutes. See Hinton v. Pacific Enter., 5 F.3d 391, 395 (9th Cir.1993) (within court's discretion to refuse amendment where allegations are fatally deficient), cert. denied, 114 S.Ct. 1833 (1994).
 
 
 19
 II. RICO claims against the Sinsheimer defendants
 
 
 20
 The district court granted the Sinsheimer defendants' motion for summary judgment on the Atesers' RICO claims, finding that there was no material question of fact whether there were predicate acts or an enterprise sufficient to sustain a RICO claim.
 
 
 21
 This court reviews the grant of summary judgment de novo, viewing the evidence in the light most favorable to the Atesers. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987).
 
 
 22
 The Atesers' complaint alleges that "Defendants are enterprises engaged in activities which affect interstate commerce," listing Steinberg, Dickmeyer and Judge Volinn as "persons ... and/or an enterprise ... who conducted and participated, directly or indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Sec. 1962(b)."[3]
 
 
 23
 The complaint states that the predicate acts constituting the alleged pattern of racketeering "are set out in subparagraphs herein." The 44-page complaint contains almost 130 subparagraphs, which assign as "predicate acts" nearly every action undertaken by the defendants in the course of the bankruptcy proceeding.
 
 
 24
 The Sinsheimer defendants submitted a long affidavit from Dickmeyer, painstakingly stating that the "predicate acts" the Atesers alleged he committed were undertaken in good faith in the course of his representation. The Atesers submitted no affidavits or declarations. The complaint is not verified, so it may not counter Dickmeyer's affidavit and establish a genuine issue of material fact. See Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir.1985) (unverified complaint insufficient to be treated as countering affidavit under Fed.R.Civ.P. 56(e)).
 
 
 25
 The Atesers argue that Dickmeyer's affidavit fails to foreclose the possibility that a jury might infer predicate acts from some of the allegations in the complaint. Following the moving party's demonstration by affidavit that there was no material issue of fact, however, the Atesers "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Atesers must come forward with specific facts showing a genuine issue for trial under the RICO statute. See Matsushita, 475 U.S. at 587. They have not done so.
 
 
 26
 The Atesers also claim that even if they did not allege facts material to proving that Dickmeyer himself committed predicate acts, he and his law firm could be liable if they consciously avoided knowledge of the illegal purpose of those associated with the bankruptcy proceeding. Such a theory requires facts in evidence supporting an inference of deliberate ignorance. United States v. McAllister, 747 F.2d 1273, 1275 (9th Cir.1984), cert. denied, 474 U.S. 829 (1985). See also United States v. Caliendo, 910 F.2d 429, 434 (7th Cir.1990) (approving "ostrich" instruction in RICO case to show scienter where the defendant admits participation but claims lack of guilty knowledge of the illegal purpose of the activity). The Atesers point to no specific facts indicating deliberate ignorance.
 
 
 27
 Finally, the Atesers' claim that the district court erred in failing to find that Dickmeyer's affidavit was made in bad faith pursuant to Fed.R.Civ.P. 56(g) is not properly before the panel, as the Atesers never made a Rule 56(g) motion in the district court.
 
 
 28
 We find that the Atesers presented no genuine issue of material fact regarding RICO predicate acts. We therefore do not address whether they presented a material question of fact as to the existence of a RICO enterprise. We also find that the district court properly refused to postpone summary judgment pending further discovery, as the Atesers did not request a continuance under Fed.R.Civ.P. 56(f), nor did they file affidavits showing the particular facts they expected to find through further discovery.
 
 
 29
 III. Claims against the bankruptcy judge and trustee
 
 
 30
 The district court dismissed the complaint against Judge Volinn and bankruptcy trustee Steinberg on the grounds of judicial immunity.
 
 
 31
 Judges are generally immune from suit for money damages. Mireles v. Waco, 112 S.Ct. 286, 287 (1991) (per curiam). That immunity protects judges against suits, not merely damages, and "is not overcome by allegations of bad faith or malice." Id. at 288. Judges lose their immunity only for actions not taken in a judicial capacity, or judicial actions taken in the complete absence of any jurisdiction. Id. Immunity attaches for any function normally performed by a judge. Id. at 288-89. Policy considerations favor a broad construction of immunity. JNC Cos. v. Ollason, 137 B.R. 46, 50 (D.Ariz.1991), aff'd, 996 F.2d 1225 (9th Cir.1993).
 
 
 32
 The immunity of Steinberg (the bankruptcy trustee) is derived from the judge who appointed him, and Steinberg is similarly immune unless he acts in the clear absence of all jurisdiction. Mullis v. United States Bankr. Court, 828 F.2d 1385, 1390 (9th Cir.1987), cert. denied, 486 U.S. 1040 (1988). A trustee, however, may be liable for intentional or negligent violations of legal duties. Bennett v. Williams, 892 F.2d 822, 823 (9th Cir.1989). Before immunity will attach, the trustee should obtain court approval and give notice to the debtor of proposed actions within official duties. Id.
 
 
 33
 The Atesers do not address the nature of the individual actions of the judge or trustee. Instead, they base their claim that immunity did not attach on their own admission that the bankruptcy proceeding which they instituted was a "sham," undertaken to avoid judgment in the state court action. They apparently claim that because they filed as "non-debtors," the bankruptcy court had no jurisdiction. They are mistaken. There is no requirement that an individual filing for bankruptcy under Chapter 11 be a debtor or financially unhealthy. See 11 U.S.C. Sec. 109(b), (d); In re Stolrow's Inc., 84 B.R. 167, 171 (Bankr. 9th Cir.1988). Even if the Atesers were found to have filed in bad faith, the bankruptcy judge would still have jurisdiction over their action. Stolrow's, 84 B.R. at 170-71.
 
 
 34
 We find immunity was properly granted to Judge Volinn. Similarly, the evidence submitted indicates that Steinberg, as trustee, acted with court approval and within his bankruptcy duties. Steinberg had orders from the bankruptcy court approving his sale of the Atesers' residence and their Hood Canal property, and his payment of the income taxes. The Atesers do not allege that they failed to receive notice of all his actions. Steinberg's uncontroverted affidavit states that he always acted within his official duty and pursuant to court order or the Bankruptcy Code. Accordingly, both Judge Volinn and Steinberg are immune from the Atesers' suit.
 
 
 35
 IV. Sanctions on appeal under 28 U.S.C. Sec. 1912
 
 
 36
 The Sinsheimer defendants request fees under 28 U.S.C. Sec. 1912, which in conjunction with Fed.R.App.P. 38 authorizes an award of attorney's fees and costs to the appellees when the appellant's contentions are without merit and the results are obvious. Gaskell v. Weir, 10 F.3d 626, 629 (9th Cir.1993).
 
 
 37
 As discussed above, the Atesers' contentions on appeal regarding the existence of a private right of action are without merit. Their claims fail even when framed in the proper legal arguments; further, the arguments they did make were often irrelevant. See Hartz v. Friedman, 919 F.2d 469, 475 (7th Cir.1990) (court must evaluate arguments actually made on appeal when considering sanctions). The district court made its reasons for the ruling on the private right of action issue abundantly clear. The Atesers could have no reasonable expectation that their arguments would convince this court to change the district court's findings. Id.
 
 
 38
 Additionally, in view of their failure to file any affidavit in response to Dickmeyer's affidavit, we find the Atesers' contentions on appeal to be frivolous. We order the payment of $2,000 to the Sinsheimer defendants for fees and costs on appeal. This award is made jointly and severally against the Atesers and their counsel. See International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1407 n. 8 (9th Cir.1985) (court has inherent power to impose sanctions on attorney and client jointly and severally, who are between them in best position to determine who caused frivolous appeal to be taken).
 
 CONCLUSION
 
 39
 We AFFIRM the decision of the district court, and award sanctions in the amount of $2,000 to the Sinsheimer defendants.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Atesers' appeal of the district court's decision in their case against Bull was dismissed for failure to prosecute on January 13, 1994 (No. 93-35101)
 
 
 [2]
 As they did not raise the issue in their complaint, we do not address the Atesers' allegations on appeal concerning the United States Attorney's failure to prosecute and alleged conflicts of interest
 
 
 [3]
 The Atesers cite 18 U.S.C. Sec. 1962(b), but their claim falls under Sec. 1962(c), which prohibits any person associated with an enterprise involved in interstate commerce from conducting the enterprise's affairs through a pattern of racketeering activity