Arline TACKETT, Plaintiff,

v.

CALIFORNIA INDEPENDENT TRUST DEED; Beverly Hills Investment and Loan Association Inc.; Glenn and Helen Arbogast; and Does 1 through 50, inclusive, Defendants.

No. CV 94–2091–RJK.

United States District Court,
C.D. California.

July 27, 1994.

Arline Tackett, in pro. per.

Bernard S. Shoeps, Marina Del Rey, CA, for defendants California Independent Trust Deed and Beverly Hills Inv. and Loan Ass'n.

Catherine B. Hanan, Century City, CA, Lorraine Kay Smythe, Suchman, Galfin & Passon, Irvine, CA, for defendant Resolution Trust Corp. as Receiver for Guardian Sav. and Loan Ass'n.

Glenn Arbogast, in pro. per.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

This matter came on for hearing on July 25, 1994, on the motion to dismiss filed by Defendant the Resolution Trust Corporation ("RTC") and the motion for summary judgment filed by Defendants Glenn and Helen Arbogast (the "Arbogasts"). The Court, having read and considered all timely-filed documents, submitted both in support of and opposition to the motions, as well as having heard oral argument thereon, determines as follows:

## I.

## BACKGROUND

This matter stems from the November 17, 1992 non-judicial foreclosure sale under a second deed of trust of certain real property commonly known as 6520 Via Lorenzo, Rancho Palos Verdes, California 90274 (the "Real Property"). Plaintiff, Arline Tackett ("Tackett"), appearing *pro se*, was the owner of the Real Property.

The Real Property was originally subject to a first deed of trust in favor of Guardian Savings and Loan Association ("Guardian"). However, on December 6, 1991, by Order No. 91–706, the Office of Thrift Supervision appointed the RTC as Receiver for Guardian (the "OTS Order"). The RTC was thereby empowered to take possession and liquidate the assets of Guardian, which included the first deed of trust on the Real Property.

On or about April 19, 1991, a second deed of trust was created when Tackett borrowed money from Defendant Beverly Hills Investment & Loan Association ("Beverly Hills I & L"). Subsequently, on or about May 14, 1991, Beverly Hills I & L sold the note and second deed of trust to Defendants the Arbogasts, who are also appearing *pro se*. Beverly Hills I & L continued to act as servicing agent for the note and second deed of trust.

On November 17, 1992, after Tackett had defaulted on the second deed of trust, the Arbogasts and Beverly Hills I & L, by and through their agent, California Independent Trust Deed, Inc., conducted a foreclosure

sale at which the property was purchased by the Arbogasts. On or about March 8, 1993, Tackett, while represented by counsel, filed a complaint in the Los Angeles County Superior Court for a variety of claims based upon the allegedly wrongful foreclosure sale. This original complaint did not name Guardian or the RTC. Thereafter, on or about April 8, 1993 and while still represented by counsel, Tackett amended her complaint, adding Guardian as a Defendant, "Doe 1."

The RTC received a courtesy copy of the complaint from Guardian personnel on or about April 14, 1993. At no time did the RTC ever file with the Superior Court a copy of the OTS Order or any other document purporting to inform the Superior Court of the RTC's status as Receiver for Guardian. Nonetheless, on March 31, 1994, the RTC filed in this Court a notice of removal pursuant to 12 U.S.C. § 1441a($l$)(3). The RTC now moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendants the Arbogasts also move for summary judgment. Tackett argues that this Court should not rule on these motions and instead remand the matter to the Superior Court because the action was improperly removed.

## II.

## DISCUSSION

### A. Removal by the RTC

The RTC has the statutory authority to remove to federal court any action initiated in state court against either the RTC, in its capacity as conservator or receiver of a failed financial institution, or against a financial institution for which the RTC has been appointed conservator or receiver. 12 U.S.C. § 1441($l$)(3)(A) (Supp.1994). In the latter cases, the RTC must institute removal pro-

ceedings "not later than 90 days after the date the [RTC] is substituted as a party...." 12 U.S.C. § 1441a($l$)(3)(A)(i).[1]

Prior to February 1992, the overwhelming weight of judicial authority had deemed the RTC "substituted" within the meaning of § 1441a($l$)(3) as of the date the RTC was appointed conservator or receiver for the failed financial institution, rather than as of the date the RTC filed a formal notice of substitution in the state court. See Resolution Trust Corp. v. Eugenio, 790 F.Supp. 686, 690 (N.D.Tex.1991); Montalvo Santiago v. Resolution Trust Corp., 779 F.Supp. 632, 636 (D.Puerto Rico 1991); Towns Real Estate & Appraisal Servs., Inc. v. Resolution Trust Corp., 753 F.Supp. 914, 916 (N.D.Ala. 1991). Hence, if the complaint was filed prior to the appointment of the RTC as conservator or receiver, the RTC had ninety (90) days from the date of the appointment to initiate removal proceedings; if the complaint was filed after the appointment, the RTC had ninety (90) days from the filing of the complaint. See, e.g., Eugenio, 790 F.Supp. at 690.

A 1991 amendment to 12 U.S.C. § 1441a($l$)(3) appears to change all that, however.[2] As of February 1, 1992, the RTC "shall be deemed substituted in any action ... for a party upon the filing of a copy of the order appointing the [RTC] as conservator or receiver for that party or the filing of such other pleading informing the court that the [RTC] has been appointed conservator or receiver for such party." 12 U.S.C. § 1441a($l$)(3)(B) (Supp.1994). The majority of courts interpreting § 1441a($l$)(3) as amended have determined that this language precludes the former interpretation of "substitution" under which the RTC was deemed substituted as of the date it was appointed conservator or receiver. See Spring Garden

---

1. The instant case involves a suit against a financial institution for which the RTC has been appointed receiver, rather than a direct suit against the RTC itself in its capacity as Receiver for a failed financial institution. Consequently, the Court's discussion is directed only towards cases against a financial institution for which the RTC has been the conservator or receiver.

2. In December 1991, Congress enacted the Resolution Trust Corporation Refinancing, Restructuring and Improvement Act of 1991 ("RTCRRIA"), Pub.L. 102–233, 105 Stat. 1761, which became effective on February 1, 1992. RTCRRIA amended 12 U.S.C. § 1441a($l$) by adding a new section, § 1441a($l$)(3)(B), which provides a standard by which to determine when the RTC has been substituted into an action.

*Assocs., L.P. v. Resolution Trust Corp.*, 26 F.3d 412, 417 (3d Cir.1994); *Henriksen v. Great American Fed. Sav. & Loan*, No. C–93–0867–MHP, 1993 WL 313178, at *3–4, (N.D.Cal. Aug. 12, 1993); *Resolution Trust Corp. v. Bakker*, 801 F.Supp. 706, 707–08 (S.D.Fla.1992). *But see Resolution Trust Corp. v. Fragetti*, 832 F.Supp. 1521, 1524–25 (M.D.Fla.1993).

The Court is mindful of the fact that § 1441a(*l* )(3)(B) on its face appears to give the RTC the unfettered ability to manipulate the date upon which the ninety (90) day removal limitations period of § 1441a(*l* )(3)(A)(i) begins to run. The RTC appears to have the ability to delay the filing with the state court of a formal request for substitution as a party until such time as the RTC determines that removal of the action to federal court would be in its best interest. Indeed, the plain language of § 1441a(*l* )(3)(B) seems to permit the RTC to wait even until trial has already begun before filing a copy of the order appointing the RTC conservator or receiver and then removing the matter to federal court. The Court is convinced, however, that Congress did not intend to give the RTC this incredible tactical advantage.

■ The instant case is not one in which the RTC employed the egregious tactics mentioned above. Were it such a case, the Court would be forced to confront the glaring inconsistencies between the ninety (90) day removal period in § 1441a(*l* )(3)(A)(i) and the seemingly unfettered power to determine when this period shall begin to run conferred upon the RTC by § 1441a(*l* )(3)(B). Since it is not such a case, the Court cannot deem the RTC's substitution into this action effective upon the appointment of the RTC as receiver for Guardian. Instead, the Court follows those cases interpreting § 1441a(*l* )(3)(B) as permitting removal by the RTC when initiated within ninety (90) days from the date the RTC files with the state court some document informing the court that the RTC has been appointed conservator or receiver for the financial institution. *See, e.g., Bakker*, 801 F.Supp. at 707–08.

■ This leads to a further difficulty. In the instant case, the RTC never filed either a copy of the OTS Order or any other document informing the Superior Court that it had been appointed receiver for Guardian. Tackett argues that this failure requires the Court to abstain from ruling on the pending motions and instead remand the matter to the Superior Court. The Court is not so inclined, however.

Courts have held that the RTC can remove an action to federal court without having first formally substituted itself as a party in the state court. *See, e.g., United Sav. Bank v. Rose*, 752 F.Supp. 506, 508 (D.D.C.1990). When it is clear that the RTC has the right to become a party to a proceeding it would "elevate form over substance" to remand the matter to state court only to have the RTC file the requisite document and then once again remove the action to federal court. *Id.* This holds particularly true where, as here, there is pending a motion to dismiss filed by the RTC which could result in the remand of the matter to state court in and of itself. Consequently, the Court refuses to remand the matter to state court to simply have the RTC perform the mere ministerial act of filing a copy of the OTS Order with the Superior Court and then once again removing the matter to this Court. To do so would be to waste the time and effort that the Court has devoted to this case thus far for no purpose other than elevating form over substance. The Court will therefore rule on the pending motions.

## B. The Arbogasts' Motion for Summary Judgment

Summary judgment is proper pursuant to Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial." *Id.*

■ The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat a motion for summary judgment, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The moving party who does not have the burden of proof at trial "need provide nothing more than a reference to those materials on file in the case which support the movant's belief that there is an absence of any genuine issues of material fact." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990).

■ The Arbogasts contend that Tackett's complaint "is devoid of any charging allegations as against the second lienholder Arbogast." Arbogasts' Brief at 4. The Arbogasts point to the language of the second deed of trust which indicates that Beverly Hills I & L was authorized to act without any instructions from the Arbogasts with respect to instituting foreclosure proceedings. This language, the Arbogasts contend, demonstrates that they are entitled to judgment as a matter of law. Not a single case has been cited by the Arbogasts.[3]

However, Tackett has alleged that the Arbogasts, without lawful notice, conducted an unlawful foreclosure sale at which the Arbogasts purchased the property. Tackett has produced some evidence to this effect. The Arbogasts cannot succeed on this summary judgment motion simply by pointing to the language of the second deed of trust. The Court is convinced that there exists a genuine issue of material fact as to whether the Arbogasts conspired to conduct an unlawful foreclosure sale. As such, the Arbogasts cannot prevail on this motion.

## C. RTC's Motion to Dismiss

In determining whether to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6), the Court must take allegations of material fact as true and construe them in the light most favorable to the non-moving party. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Buckley v. Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992).

In her complaint, Tackett predicates all of her causes of action on the allegedly unlawful November 17, 1992, foreclosure sale. This foreclosure sale was carried out by the holders of the second deed of trust. The RTC, as receiver for Guardian, held the first deed of trust. Neither Guardian nor the RTC is alleged to have taken any part in the foreclosure sale.

Prior to bringing the instant motion, the RTC had brought a similar motion to dismiss, which the Court granted on the ground that neither the RTC nor Guardian was alleged to have either foreclosed on the first deed of trust or taken part in the foreclosure sale. Tackett was given leave to file an amended complaint. She has done so. However, this amended complaint suffers from the same defect as the first complaint with respect to a cause of action against the RTC.

■ Tackett has amended her complaint to allege that Guardian had some duty to notify the public as to the status of the foreclosure proceedings, which were conducted by the junior lienholders. However, Tackett can point to no legal authority, nor has the Court's own research disclosed any, which would place upon the holder of a first trust deed the legal obligation to notify the public, or anyone else, as to the status of a foreclosure sale conducted by a junior lienholder.

■ The Court is therefore convinced that Tackett has not alleged and cannot prove any set of facts which would entitle her to relief against Guardian or the RTC for the injuries complained of. On this basis, the RTC's motion to dismiss must be granted. The dismissal of the RTC from this case results

3. As mentioned earlier, the Arbogasts are proceeding *pro se.*

in the elimination of any basis for federal jurisdiction over this matter. In such a situation, the Court has the discretionary authority to remand the matter to state court. *See Price v. PSA. Inc.,* 829 F.2d 871, 876 (9th Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988) (once basis for removal jurisdiction is dropped from the proceedings, federal court has discretion to remand the action to the state court from which it came). The Court will exercise this discretionary authority.

### III.

### ORDER

Accordingly, it is HEREBY ORDERED that the Arbogasts' Motion for Summary Judgment is DENIED. It is FURTHER ORDERED that the RTC's Motion to Dismiss is GRANTED and Tackett's complaint is DISMISSED WITH PREJUDICE as against the RTC. It is FURTHER ORDERED that this action is REMANDED to the Los Angeles County Superior Court; the Clerk of Court shall certify a copy of this order to the Clerk of that court.

IT IS SO ORDERED.