**Russell LOPES, Plaintiff,**

v.

**Terrence ROGERS, Katrina Alabanza, Carl Hirata, State of Hawaii, and John Does 1–10, Defendants.**

**Civ. No. 95–00200 DAE.**

United States District Court, D. Hawai'i.

Nov. 27, 1995.

738

Eric A. Seitz, Honolulu, HI, for Russell Lopes.

George S.S. Hom, Charles F. Fell, Office of the Attorney General—State of Hawaii, Honolulu, HI, for Terrence Rogers, Katrina Alabanza, Carl Hirata and State of Hawai'i.

*ORDER GRANTING DEFENDANTS TERRENCE ROGERS AND KATRINA ALABANZA'S MOTION FOR SUMMARY JUDGMENT IN THEIR INDIVIDUAL CAPACITIES AND DENYING DEFENDANT CARL HIRATA'S MOTION FOR SUMMARY JUDGMENT IN HIS INDIVIDUAL CAPACITY*

DAVID ALAN EZRA, District Judge.

The court heard Defendants' Motion for Summary Judgment on November 20, 1995.

Eric A. Seitz, Esq., appeared on behalf of Plaintiff Russell Lopes ("Plaintiff"); Guy P.D. Archer, Esq., appeared on behalf of Defendants Terrence Rogers ("Rogers"), Katrina Alabanza ("Alabanza"), & Carl Hirata ("Hirata") in their individual capacities (collectively "Defendants"). After hearing argument and reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants Terrence Rogers and Katrina Alabanza's Motion for Summary Judgment in Their Individual Capacities and DENIES Defendant Carl Hirata's Motion for Summary Judgment.

## BACKGROUND

Plaintiff is a 32–year–old male resident of Maui. The State of Hawaii operates Hawaii State Hospital ("HSH") at Kaneohe, Hawaii. Rogers was superintendent of HSH from September 1991 to April 1993. Alabanza was a registered nurse and Hirata was a paramedical assistant at HSH at the time of the alleged incident.

On November 22, 1992, the Second Circuit Court, State of Hawaii, entered an Order for Examination of Defendant and Appointing Examiners, directing that Lopes be examined for mental illness at HSH to determine his fitness to proceed in a pending criminal assault case. In early December, Plaintiff was admitted to HSH pursuant to the court order. Plaintiff's mental condition was diagnosed as mild mental retardation, psychoactive alcohol abuse, and psychoactive cannabis abuse. *See* Defendants' Concise Statement, at 3. Plaintiff had eleven criminal charges and had been admitted to HSH two times previously.

On December 18, 1991, the District Court of the Second Circuit, State of Hawaii, filed Findings and Order of Involuntary Hospitalization in Lieu of Criminal Prosecution. Upon returning from court, Plaintiff was transferred from the intensive supervision unit to the Pali Ward with "civil commit" status.

On January 7, 1992, there was an incident involving Plaintiff, Alabanza, and Hirata. At

or about that time, Plaintiff alleges he sustained several injuries including a broken wrist and a black eye. Plaintiff claims that he was injured when Hirata assaulted him. Defendants contend that they were lawfully escorting Plaintiff to a time-out.[1] Defendants allege that Plaintiff kicked Alabanza who was at the time eight months pregnant and in the course of subduing Plaintiff, both Plaintiff and Hirata fell to the floor.

Plaintiff brought an action in the Circuit Court for the First Circuit, State of Hawaii, alleging civil rights violations, negligence and infliction of emotional distress, all stemming from Defendants' treatment of him at HSH. Defendants removed the case to this court on March 9, 1995. The parties agreed to remand the state law claims and keep the claims against the Defendants in their individual capacities in federal court. Individual Capacity Defendants have filed this motion for summary judgment claiming that they are immune from suit under the doctrine of qualified immunity.

### STANDARD OF REVIEW

■ Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts

evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

■ A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. at 2513. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to

---

**1.** "Time-out" is the term used to indicate taking a patient to an unlocked quiet room away from stimuli without locking or restraining the patient.

*See* Defendants' Motion for Summary Judgment, Affidavit of Katrina Alabanza, ¶ 12.

a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

■ Defendants assert that they are entitled to qualified immunity. Government officials who perform discretionary functions are protected from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). These officials are protected from liability for civil damages if "(1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate and (2) the officer acted in good faith." *Harris v. City of Roseburg,* 664 F.2d 1121, 1128 (9th Cir.1981). The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (1992). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

### A. Due Process Claim

Plaintiff alleges that rights secured to him by the Constitution of the United States, including his Fourteenth Amendment right to due process of law and his liberty interest in personal safety were violated by the Defendants. Defendants assert that there is no clearly established right at issue, and therefore, the public officials should be immune.

■ Plaintiff's claims rest on the Defendants' use of force in this case. "In operating an institution [ ], there are occasions in which it is necessary for the State to restrain the movement of residents—for example, to protect them as well as others from violence." *Youngberg v. Romeo,* 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982). *Youngberg* advocated balancing "the

liberty of the individual" and "the demands of organized society" to determine whether a substantive constitutional right had been violated. *Id.; See also Poe v. Ullman,* 367 U.S. 497, 542, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (Harlan dissenting). Restrictions on liberty reasonably related to legitimate governmental objectives do not violate the Constitution. *Youngberg,* 457 U.S. at 320, 102 S.Ct. at 2460. Additionally, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Defendants maintain that clearly established law in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) allows state employees to use reasonable force to maintain order. This makes logical sense. By definition, State psychiatric hospitals, like state correctional facilities, are charged with the extraordinary responsibility of working with individuals that, at times, are unable to conform to societal rules and mores. Some force or restraint of liberty may be required to elicit compliance with the rules of these institutions so as to ensure the safety of other patients as well as the staff. The court finds, therefore, that force used to enforce a time-out at a psychiatric hospital does not by itself violate clearly established laws provided that the staff members do not have malicious intent, and the force used was reasonable and necessary under the circumstances.

■ Other than his conclusory allegations, Plaintiff has not identified any evidence that indicates, in light of all circumstances, that Defendants Rogers and Alabanza acted unreasonably or with the intent to injure him. With respect to Rogers in his capacity as superintendent of HSH, the evidence shows that HSH was in the process of revising policies and procedures for seclusion, restraint, and time-outs in conjunction with the U.S. Department of Justice.[2] Additionally, Plaintiff does not plead, and there is no

---

**2.** The quarterly reports submitted to the Department of Justice demonstrate Defendants' good faith efforts in updating their procedures. *See*

Defendants' Motion for Summary Judgment, Exhibits "G," "H," and "I."

factual support indicating, that Alabanza intended for Hirata to assault or use excessive force against Lopes. Plaintiff fails to make the requisite showing of bad faith to defeat the qualified immunity claim with regard to Rogers and Alabanza. For these reasons, the court GRANTS the Defendants' Motion for Summary Judgment as to the Due Process claims against Rogers and Alabanza.

■■■ As for Hirata, "Plaintiff asserts that he was sitting quietly, trying to take a nap when Hirata came over, directed him to participate in group activities, and then threw him to the floor and started assaulting Russell when Russell started walking away." *See* Plaintiff's Memorandum in Opposition to Individual Capacity Defendants [ ] Motion for Summary Judgment, at 9. Plaintiff's allegations of an unprovoked attack are disputed by Defendant Hirata who maintains that "[w]e would not have fallen to the floor if Russell had not kicked Nurse Alabanza." *See* Individual Capacity Defendants [ ] Motion for Summary Judgment, Affidavit of Carl Hirata, ¶ 15. If the facts are as Plaintiff claims, the force used by Hirata would be excessive and he could not reasonably believe his actions were lawful. The contours of the right to be free from unprovoked purposeful assault are well established and should have been known to Hirata. Viewing the facts in the light most favorable to Plaintiff, this court cannot determine as a matter of law that there was no excessive force or that Hirata's conduct was objectively reasonable. The question cannot be resolved on summary judgment but rests on the credibility of two clearly conflicting stories of what occurred. Consequently, the court DENIES summary judgment on qualified immunity grounds for Plaintiff's claim that Hirata violated his due process rights.

## B. Eighth Amendment Cruel and Unusual Punishment

■■■ The use of excessive force by a state official violates a prisoner's Eighth Amendment right to be free from cruel and unusual punishment.[3] An Eighth Amendment violation[4] occurs only when a prison official applied force "maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 3, 112 S.Ct. 995, 997, 117 L.Ed.2d 156 (1992). To determine whether the use of force was wanton and unnecessary in a given case, relevant factors include: "the extent of injury suffered[,] . . . the need for application of force, the relationship between that need and the amount of force used, the threat [to the safety of staff and inmates] 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)).

■■■ There is no Eighth Amendment violation if "force was applied in a good-faith effort to maintain or restore discipline. . . ." *Id.* " 'Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Whitley,* 475 U.S. at 322–23, 106 S.Ct. at 1085–86 (citation to quoted case omitted).

■■■ The Eighth Amendment also imposes duties on officials to provide humane conditions of confinement and to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer,* 468

---

3. Defendants argue that the court should dismiss Plaintiff's Eighth Amendment claims because Plaintiff was not a prisoner or a pretrial detainee at the time of the injury. Here, Plaintiff was civilly committed to the State Hospital upon a determination that he was mentally incompetent to stand trial in state criminal court. "Some punishments, though not labeled 'criminal' by the State, may be sufficiently analogous to criminal punishments in the circumstances in which they are administered to justify application of the Eight Amendment." *Ingraham v. Wright,* 430 U.S. 651, 669 n. 37, 97 S.Ct. 1401, 1411 n. 37, 51

L.Ed.2d 711 (1977). While Defendants are technically correct in stating that "civil commit" status is not "punishment" per se, this court finds it sufficiently analogous to determine the issues on their merit. It is clear that Lopes was being held against his will and was not free to leave the facility.

4. The Eighth Amendment applies to states through incorporation by the *Fourteenth* Amendment.

U.S. 517, 526–27, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984)). In prison-conditions cases, Plaintiff must show that the official's "state of mind is one of 'deliberate indifference' to inmate health and safety." *Id.*, —— U.S. at ——, 114 S.Ct. at 1977. Deliberate indifference entails more than mere negligence. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To recover, Plaintiff must show that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, —— U.S. at ——, 114 S.Ct. at 1981. Also, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*, at —— —— ——, 114 S.Ct. at 1982–83.

Plaintiff claims that each of the Defendants manifested a deliberate indifference to his right to be free from an unreasonable use of force. Specifically, Plaintiff claims: (1) Hirata assaulted him, (2) Alabanza participated in the assault by her failure to supervise and control Hirata, and her failure to ask for additional assistance as required by hospital procedure; and (3) Rogers tacitly authorized the offensive practices by failing to adequately train and staff the hospital and by neglecting to act on Hirata's record of excessive force. *See* Plaintiff's Memorandum in Opposition to Individual Capacity Defendants' [ ] Motion for Summary Judgment, at 9, 10, 14.

 Plaintiff relies heavily on a letter to Governor Waihee to prove that Rogers failed to act despite his knowledge that the hospital conditions violated patients' constitutional rights of safe confinement. *See* Plaintiff's Memorandum in Opposition to Individual Capacity Defendants' Motion for Summary Judgment, Exhibit A. Taking Plaintiff's allegations as true, the court finds that Rogers is not liable under the deliberate indifference standard because of his efforts to revise the policies and procedures at the hospital. *See Farmer*, at —— – ——, 114 S.Ct. at 1982–83. Rogers noted that HSH generally tried to

comply within their budgetary constraints to changes and recommendations made in hospital progress in the area of seclusion, restraint and time-out. *See* Affidavit of Terrence Rogers, ¶ 28. Additionally, Rogers stated that he did not have reason to believe that Alabanza or Hirata would seek to punish or injure Lopes. *Id.*, ¶ 15. In reviewing the evidence in the light most favorable to the Plaintiff, the court finds that Rogers' awareness of Hirata's employment record and incidents of past violence are insufficient to show that Rogers had "knowledge of a substantial risk of serious harm" to Plaintiff. *See Farmer*, at ——, 114 S.Ct. at 1981. In sum, it appears that Rogers responded reasonably to the conditions of the hospital and was not aware of any particular danger to Plaintiff's safety. Therefore, the court finds that Rogers has qualified immunity from Plaintiff's Eighth Amendment claims.

 Similarly, Alabanza is not liable for deliberate indifference to Plaintiff's rights because the record does not indicate that Alabanza knew of any substantial risk of harm to Plaintiff. There is no evidence that in authorizing Hirata to place Plaintiff in a "time-out," Alabanza was actually ordering him to assault or to harm Plaintiff. Furthermore, the record does not allege that Alabanza acted unreasonably[5] or in bad faith. Consequently, the court finds that Alabanza is entitled to qualified immunity as to Plaintiff's Eighth Amendment claims.

The claim against Hirata, however, stems from the use of excessive force, rather than the failure to provide a safe environment. In this context, the deliberate indifference standard is inappropriate. Instead, Hirata's actions are governed by the *Whitley* standard. 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–85 ("whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"). Plaintiff alleges that Hirata assaulted him without provocation. Hirata, on the other hand, maintains that he did not harbor any animosity toward Plaintiff or assault him in any way. *See* Individual

---

5. In support, Defendants cite deposition testimony by Dr. Joel Dvoskin, a clinical psychologist from the University of Arizona, who indicates that Alabanza made a very reasonable judgment. *See* Defendants' Reply Memorandum in Support of Motion for Summary Judgment, Exhibit A.

Capacity Defendants [ ] Motion for Summary Judgment, Affidavit of Carl Hirata, ¶¶ 18, 19. Although the Plaintiff does not specifically plead malice, the reasonableness of Hirata's actions appears to be a factual dispute that cannot properly be decided on summary judgment. Without more facts, the court declines to extend qualified immunity to Defendant Hirata at this time. Hence, the court GRANTS summary judgment as to Plaintiff's Eighth Amendment claims against Rogers and Alabanza and DENIES summary judgment as to claims against Hirata.

## CONCLUSION

For the reasons stated above, the court finds that Plaintiff's claims against Defendants Rogers and Alabanza in their individual capacities are barred by the doctrine of qualified immunity. There are, however, several substantial factual disputes that precludes Hirata from qualified immunity in this case. Therefore the court GRANTS IN PART Defendants' motion for summary judgment for all claims against Defendants Rogers and Alabanza, but DENIES IN PART Defendants' motion for Plaintiff's due process and Eighth Amendment claims against Defendant Hirata.

IT IS SO ORDERED.