Kathleen HSIUNG, et al., Plaintiff,

v.

**CITY AND COUNTY OF HONOLULU,
a municipal corporation of the State
of Hawaii, Defendant.**

**No. CV 05–00104DAE–LEK.**

United States District Court,
D. Hawai'i.

July 19, 2005.

Martin Anderson, Joachim P. Cox, Robert K. Fricke, Goodsill Anderson Quinn & Stifel LLLP, Honolulu, HI, for Kathleen Hsiung, Ruth G. Rand, Deborah Darlene Dupire–Nels, Robert Lee Dupire–Nelson, Ira Nagel, Dorothy Nagel, Dan H. Devaney, III, Cedric Choi, Patricia Choi, Mary Ilma Costigan Anderson, Edward Burrnett Keyes, Jr., Gerald Henry Cutter, Mildred P. Ault, Mary H. Shelton, Wallace David Loo, Marjorie Anne Loo, Lola Gebauer, William C. Dixon, Patricia Dixon, Bruce D. Dugstad, Jean Marie Morel, Jeannette J. Warren, Marguerite Elizabeth Gonsal, Daniel Young Lee, Juliet Ok Lee, Steven Jon Berman, Heidi Yuen Berman, George Edward Isaacs, Shirley Mae Isaacs, Norma Ann Stillwell, Paul C.T. Loo, First Hawaiian Bank, Paul C.T. Loo and Violet S.W. Loo, Derek Michael Poag, Ethel H. Bird, Nathan H. Hochhauser, Carl E. York, Jr., Leslie T. Hoshide, Donna Y. Hoshide, plaintiffs.

Winston K.Q. Wong, Paul M. Iguchi, Don S. Kitaoka, Derek T. Mayeshiro, Office of Corporation Counsel–Honolulu, Honolulu, HI, for Honolulu, City & County of, a municipal corporation of the State of Hawaii, defendant.

Wayne P. Nasser, James K. Mee, Kevin W. Herring, Ashford & Wriston, Honolulu, for Kamehameha Schools, Diane Joyce Plotts, Robert Kalani Uichi Kihune, James Douglas Keauhou Ing, Constance Hee Lau, Charles Nainoa Thompson, intervenor defendants.

*ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The Court heard Plaintiffs' Motion for Summary Judgment on June 22, 2005. Martin Anderson, Esq., and Joachim P. Cox, Esq., appeared at the hearing on behalf of Plaintiffs; Deputies Corporation

Counsel Don S. Kitaoka, Derek T. Mayeshiro, and Paul M. Iguchi appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

Plaintiffs, who hold leasehold interests in residential condominiums at a condominium complex on Kahala Beach, have sued Defendant, the City and County of Honolulu ("the City"), seeking to invalidate a city ordinance that Plaintiffs claim violates the Contracts Clause of the United States Constitution.

Plaintiffs are owners of leasehold interests in a condominium complex on Kahala Beach located at 4999 Kahala Avenue in Honolulu, Hawaii. That property is owned in fee simple by the Bishop Estate ("Kamehameha Schools"). According to Plaintiffs' complaint, they each entered into contracts with the City and County of Honolulu ("the City") in which each party agreed to seek diligently to acquire for Plaintiffs an undivided fee simple interest in the real property at Kahala Beach. Plaintiffs each paid the City $1,000 in consideration, and in return, the City agreed as follows:

> The City shall convey to the Buyer by Quitclaim Deed (a) all of its right, title and interest in (i) the Unit and all limited common elements appurtenant to the Unit, and (ii) the undivided percentage interest in the real property and other common elements upon which the Unit is situated and (b) all of its right, title and interest in Buyer's Condominium Conveyance Document ("Condominium Conveyance Document") of the Unit and the real property ("Real Property").

(Def. Memo. in Opp'n, Ex. B.) These actions were to be undertaken after the City acquired the property through its power of eminent domain, pursuant to Chapter 38 of the Revised Ordinances of Honolulu 1990 and the Rules for Residential Condominium, Cooperative and Planned Development Leasehold Conversion.

In 1997, pursuant to Chapter 38, the City first attempted on behalf of Plaintiffs to acquire Kamehameha Schools' fee interest underlying the lessees' leasehold units. In the City's first attempt at condemnation, there were only 23 applicants for leasehold conversion from the 196 units in the condominium complex. Two decisions of the Hawaii Supreme Court ultimately invalidated the City's designation of these 23 Kahala Beach units for condemnation. *Coon v. City and County of Honolulu,* 98 Hawai'i 233, 47 P.3d 348 (2002); *City and County of Honolulu v. Ing,* 100 Hawai'i 182, 58 P.3d 1229 (2002). The Hawaii Supreme Court held that the 23 lessees did not satisfy the minimum number of applications required for condemnation; the court found Chapter 38 to require, given the number of condominium units in the development, 25 applicants.

After *Coon* and *Ing,* the City again sought condemnation of the units on behalf of Plaintiffs, and filed a complaint seeking condemnation on February 14, 2003, in Hawaii state court. In the second action, 31 applicants participated; 15 of these applicants were in the first action. On March 4, 2004, the state court judge ruled that several lessees were not qualified applicants, and therefore Plaintiffs failed to maintain continuously the 25 units required under Chapter 38. The case was dismissed, and an appeal of the dismissal is pending before the Hawaii Supreme Court in the consolidated *Ing* cases.

On August 2, 2004, Honolulu City Council Member Mike Gabbard introduced City Council Bill 04–53 ("Bill 53"), which was written to repeal Chapter 38. In section 1 of bill, the City Council issued the following findings:

The council understands that the use of eminent domain should not be taken lightly and must be justified by a valid public purpose. Section 3–110 of the Revised Charter of the City and County of Honolulu ("Charter") states: "The council shall by resolution determine and declare the necessity of taking property for public purposes, describing the property and stating the uses to which it shall be devoted." Article I, Section 20 of the Hawaii Constitution also states that private property shall not be taken for public use without just compensation. Thus, the exercise of eminent domain must be supported by (1) a valid public purpose and (2) just compensation. Under Hawaii law, the council has the discretion whether or not to exercise the power of eminent domain. The city has always taken the position that the council has the ultimate power to condemn.

The public purposes of Chapter 38 were set forth in detail in Ordinance 91–95. According to Ordinance 91–95, the purpose of Chapter 38 was to provide affordable housing and to strengthen the economy through fee ownership. Ordinance 91–95 lists "runaway land prices," "shortage of fee simple residential condominiums," "artificial inflation of land values," "lessees forced to accept long-term leases ... which contains terms and conditions which are financially disadvantageous to them," "land values, artificially inflated by concentrated or single ownership," and "potential for economic instability and disruption on Oahu" as public purpose furthered by Chapter 38.

The council finds that mandatory conversion of multi-family residential leaseholds under Chapter 38 is no longer needed to assuage the social and economic problems mentioned in Ordinance 91–95 and, therefore, no longer advances a public purpose for which the city should exercise its extraordinary powers of condemnation. The social and economic problems listed as the public purposes furthered by Chapter 38 do not exist today to the same extent as they may have existed in 1991.

The council further finds that a lessee purchasing a residential leasehold unit knew or should have known about the negative aspects of the lease prior to the purchase. Since 1990, such a lessee should have received a copy of the underlying lease. Since 1991, the lessee should have received a simplified disclosure of the salient terms of the lease agreement, including but not limited to, the remaining term of the lease, the rent renegotiation dates, the potential for significant increases in renegotiated rents, and the surrender clause.

In addition, it is a fundamental principle that the power to enact necessarily implies the power to repeal and one legislature cannot be limited or bound by the actions of a previous one. Thus, the council has the right to make an independent decision whether to repeal the law entirely.

Finally, "there is no vested right in a public law which is not in the nature of a private grant, and however beneficial a statute may be to a particular person or however injuriously the repeal may affect him, the legislature has the right to abrogate it .... No person has a vested interest in any law or legislative policy which entitles him to have it remain unaltered for his benefit." *In re Application of Herrick*, 82 Haw. 329, 338, 922 P.2d 942 (1996).

Based on the forgoing findings, the council believes and concludes that Chapter 38 no longer serves a public purpose and should be repealed.

(Def. Memo. in Opp'n, Ex. C.)

Bill 53 provided a savings clause, however, for those lessee applicants who were

already involved in the condemnation process under Chapter 38 when Bill 53 became law. The clause provides:

Section 3. (a) This ordinance shall not affect any eminent domain proceeding for the acquisition of units validly designated in projects, the condemnation of which units was approved by the council by resolution before the effective date of this ordinance. Such an eminent domain proceeding may be instituted or, if already instituted, continued after the effective date of this ordinance in accordance with Chapter 38, ROH, as existing on the day before the effective date of this ordinance.

(Def. Memo. in Opp'n, Ex. C.) The City Council's approval is the determinative event on which permission to continue the leasehold condominium conversion process under Chapter 38 hinges.

Shortly before the City Council was scheduled to vote on Bill 53, a third group of Kahala Beach lessees applied for leasehold conversion. This group includes the lessee applicants from the case currently pending review by the Hawaii Supreme Court, and three new applicants who are attempting to join the action on appeal. The group seeks to begin the conversion process anew in the event the Hawaii Supreme Court denies their appeal.

On January 26, 2005, the City Council approved Bill 53, which sought to repeal Chapter 38. The bill made no provision regarding the City's contracts with Plaintiffs. Bill 53 became law on February 9, 2005.

Under the savings clause of Bill 53, those Kahala Beach lessees who are parties in the condemnation action presently pending appeal before the Hawaii Supreme Court are "grandfathered in" if they succeed on appeal, because they have already received City Council approval and condemnation proceedings have already commenced on their behalf. However, if they do not prevail in their appeal, they would be prevented under the new law from completing their new applications for leasehold conversion. The three new applicants would also be foreclosed from completing their leasehold conversion applications unless the aforesaid appeal is successful and the three new applicants are successful in joining the lawsuit.

Plaintiffs filed their complaint in federal court on February 16, 2005. Plaintiffs have also filed a separate action in Hawaii state court against the City for breach of contract.

In the instant federal complaint, Plaintiffs allege that, by taking such action, the City totally repudiated its contracts with Plaintiffs. Additionally, Plaintiffs assert that condemnation proceedings were already underway regarding some units at the Kahala Beach complex, and that there is a statutory requirement of a minimum number of applicants who must participate in such condemnation cases in order for the proceedings to continue. Bill 53 allowed pending condemnation proceedings to continue despite the repeal of Chapter 38. Plaintiffs claim, however, that the City knew of the statutorily required minimum number of participants, and therefore purposefully included in Bill 53 a provision preventing additional applicants from joining pending condemnation proceedings in an effort to prevent Plaintiffs from maintaining this minimum number.

. Count One of Plaintiffs' complaint alleges that, by attempting to negate the contracts entered into pursuant to Chapter 38, Bill 53 constitutes an impairment of the obligation of contracts in violation of Article I, Section 10 of the U.S. Constitution. Plaintiffs allege in Count Two that, by singling out the parties to ongoing condemnation proceedings and preventing new applicants from joining the actions, Bill 53 constitutes a Bill of Attainder in

violation of Article I, Section 10. In Count Three, Plaintiffs allege that Bill 53 deprives them of rights, privileges, and immunities guaranteed by Article I, Section 10, and thereby violates 42 U.S.C. § 1983. In their prayer for relief, Plaintiffs seek the following: a court order declaring Bill 53 to be an unconstitutional impairment of Contract, bill of attainder, and/or in violation of 42 U.S.C. § 1983; an injunction preventing the implementation of Bill 53; any other just and equitable relief; and, costs and attorneys' fees.

Plaintiffs filed a motion for a preliminary injunction on March 1, 2005.

On March 18, Kamehameha Schools filed a Motion to Intervene. After a hearing on March 30, the Court denied Kamehameha Schools' Motion to Intervene, but stated that it would entertain a motion filed by Kamehameha Schools seeking leave to participate as an amicus curiae. On April 1, Kamehameha Schools filed a motion for leave to participate as an amicus curiae in support of Defendant City and County of Honolulu. The Court granted this motion during the April 4 hearing on Plaintiffs' motion for a preliminary injunction.

On April 4, the Court heard Plaintiffs' motion for a preliminary injunction. At the hearing, the Court denied Plaintiffs' motion, explaining that the lack of irreparable harm precluded the grant of preliminary injunctive relief. Rather, the Court explained that motions for summary judgment were the proper form for Plaintiffs' and Defendant's arguments, and ordered Plaintiffs to file a motion for summary judgment.

Plaintiffs filed the instant motion for summary judgment on April 25, 2005. Defendant filed its Opposition on May 9. On May 16, Plaintiffs filed their reply in support of the motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 323, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is pre-

sented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this Court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or it is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

As the Court expressed at the hearing on this motion, the Court sees before it a sad, unnecessary case. It is not the place of the Court to challenge the actions taken by the City Council in terms of wisdom or public policy, and this order will not purport to do so. However, the fair and wise decision, from the perspective of the City, would have been to draft the repeal of Chapter 38 so as to allow those leaseholders such as Plaintiffs, who have begun in good faith the process of conversion, to be grandfathered in. The integrity of the City Council members who reached this decision has never been doubted; however, the people of the City and County of Hon-

olulu are ill-served by the avoidable waste of taxpayers' money that has resulted from this decision. Nonetheless, the duty of the Court is to uphold the Constitution and the republican form of government of the United States. The Court therefore addresses Plaintiffs' claims as follows.

■ Plaintiffs assert that the repeal of Chapter 38 constitutes a violation of the Contracts Clause because it effects a substantial impairment of Plaintiffs' contracts with the City. However, Defendant argues that it is absolved from any liability based on an exception to the requirements of the Contracts Clause that has been carved out by the courts and referred to as the "reserved powers" doctrine. The reserved powers doctrine provides that "a state government may not contract away 'an essential attribute of its sovereignty.' " *United States v. Winstar Corp.,* 518 U.S. 839, 888, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

Under the reserved powers doctrine, when a state impairs the obligation of its own contract, the initial inquiry concerns the ability of the state to enter into an agreement that limits its power to act in the future. *U.S. Trust Co. of New York v. New Jersey,* 431 U.S. 1, 23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). This inquiry requires a determination as to the state's power to create irrevocable contract rights, rather than an inquiry into the purpose or reasonableness of the subsequent impairment. *Id.* "In short, the Contract Clause does not require a State to adhere to a contract that surrenders an essential attribute of its sovereignty." *Id.*

■ Applying this standard, the United State Supreme Court has repeatedly held for more than a century that the Contracts Clause cannot be used to bind the state to a contract that purports to restrict its power of eminent domain. *See, e.g., West River Bridge Co. v. Dix,* 47 U.S. 507, 6 How. 507, 12 L.Ed. 535 (1848) (holding

that the Contracts Clause does not prevent a State from exercising the power of eminent domain) ("This power, denominated the *eminent domain* of the State, is, as its name imports, paramount to all private rights vested under the government, and these last are, by necessary implication, held in subordination to this power, and must yield in every instance to its proper exercise."); *U.S. Trust Co. of New York,* 431 U.S. at 24, n. 21, 97 S.Ct. 1505 ("[T]he doctrine that a State cannot contract away the power of eminent domain has been established since *West River Bridge Co. v. Dix ....*"); *Winstar Corp.,* 518 U.S. at 874, 116 S.Ct. 2432 (citing *West River Bridge* for the proposition that "a state's contracts do not surrender its eminent domain power"). Indeed, the power of eminent domain, along with the police power, is often cited as the classic example of an "essential attribute of sovereignty." *U.S. Trust Co. of New York,* 431 U.S. at 23–24, 97 S.Ct. 1505.

Indeed, the federal courts' answer to the argument presented by Plaintiffs was already a foregone conclusion almost a century ago, as the Supreme Court explained:

> There can be now, in view of the many decisions of this court on the subject, no room for challenging the general proposition that the states cannot by virtue of the contract clause be held to have divested themselves by contract of the right to exert their governmental authority in matters which from their very nature so concern that authority that to restrain its exercise by contract would be a renunciation of power to legislate for the preservation of society or to secure the performance of essential governmental duties .... [I]t is equally true that the previous decisions of this court leave no doubt that the right of government to exercise its power of eminent domain upon just compensation for a public purpose comes within this general doctrine.

*Contributors to Pa. Hosp. v. City of Philadelphia,* 245 U.S. 20, 23–24, 38 S.Ct. 35, 62 L.Ed. 124 (1917) (internal citations omitted). The Supreme Court's long line of precedent on the subject also shows that the reserved powers doctrine applies equally to protect the right of eminent domain from contractual infringement when that right has been delegated to a municipality. *See, e.g., Contributors to Pa. Hosp.,* 245 U.S. at 23–24, 38 S.Ct. 35 (applying the reserved powers doctrine to the exercise of eminent domain by a municipality). In the instant case, the state legislature delegated its power of eminent domain to the City and County of Honolulu in Hawaii Revised Statute § 46–1.5(6).

In recent years, the Supreme Court has taken no action that would undermine this longstanding authority. Rather, the Court's latest decisions regarding the power of eminent domain have only bolstered the "longstanding policy of deference to legislative judgments in this field." *See, e.g., Kelo v. City of New London,* —— U.S. ——, ——, 125 S.Ct. 2655, 2663, —— L.Ed.2d ——, —— (2005). In *Kelo,* the United States Supreme Court was faced with a factually distinguishable scenario from the one at hand; the petitioners in that case were landowners who sought to challenge a city's exercise of eminent domain power over their property, arguing that the takings were not for public use. *Kelo,* 125 S.Ct. at 2658–2661. However, in affirming the city's finding of public purpose that underlaid its exercise of eminent domain, the Supreme Court once again evidenced the wide birth afforded to states and municipalities in the exercise of that particular sovereign power. Reiterating its pronouncement in *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 242, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the Court in *Kelo* explained: "When the legislature's purpose is legitimate, and its means are not irrational, our cases make

clear that empirical debates over the wisdom of takings ... are not to be carried out in the federal courts." 125 S.Ct. at 2667.

■ Plaintiffs simply have not brought forth any argument that would persuade the Court that this clear Supreme Court precedent is somehow inapplicable to the facts of this case. Plaintiffs assert that their contracts do not limit the right of eminent domain, but rather Chapter 38 does. Alternatively, Plaintiffs argue that the aforementioned cases only stand for the proposition that a contract cannot prevent the exercise of eminent domain; contracts purporting to require the exercise of the eminent domain power are therefore acceptable under the reserved powers doctrine, Plaintiffs contend. These arguments are illusory. The sovereign right of eminent domain necessarily consists of the discretion to exercise that power in the manner the sovereign deems to be in the public's best interest. A contract requiring the sovereign to exercise the power is just as limiting as a contract prohibiting it from doing so. Although factually distinguishable, the Supreme Court's recent decision in *Kelo* may be construed as support for the proposition that a legislature's power of eminent domain necessarily encompasses the ability to exercise both the right and to limit the right. *Id.* at 2668 ("In affirming the City's authority to take petitioners' properties, .... [w]e emphasize that nothing in our opinion precludes any State from placing further restrictions on its exercise of the takings power."). Thus, the Court finds that the Contracts Clause cannot be used under these circumstances to invalidate the repeal of Chapter 38, because the reserved powers doctrine reserves essential attributes of sovereignty such as the power of eminent domain to the discretion of the states.

■ Because the Court finds that the reserved powers doctrine applies to create an exception to the Contract Clause analysis, the Court does not consider the parties' arguments regarding the unmistakability doctrine. The so-called unmistakability doctrine provides that a sovereign will only be held to have surrendered its sovereign powers if the contractual limitation explicitly states as much. "Without regard to its source, sovereign power, even when unexercised is an enduring presence that governs all contracts subject to the sovereign's jurisdiction, and will remain intact unless surrendered in *unmistakable* terms." *Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment,* 477 U.S. 41, 52, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986) (emphasis added). As noted above, however, the Supreme Court has also indicated that, under the reserved powers doctrine, a sovereign can never be contractually bound to surrender "an essential attribute of its sovereignty." *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). The Supreme Court explained the two doctrines, which emerged in the mid-Nineteenth Century, as follows:

[T]wo distinct limitations developed to protect state regulatory powers. One came to be known as the 'reserved powers' doctrine, which held that certain substantive powers of sovereignty could not be contracted away. *See West River Bridge Co. v. Dix,* 6 How. 507, 12 L.Ed. 535 (1848) (holding that a State's contracts do not surrender its eminent domain power). The other, which surfaced somewhat earlier in *Providence Bank v. Billings,* 29 U.S. 514, 4 Pet. 514, 7 L.Ed. 939 (1830), and *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge,* 36 U.S. 420, 11 Pet. 420, 9 L.Ed. 773 (1837), was a canon of construction

disfavoring implied governmental obligations in public contracts. Under this rule that "[a]ll public grants are strictly construed," we have insisted that "[n]othing can be taken against the State by presumption or inference," and that "neither the right of taxation, nor any other power of sovereignty, will be held ... to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken." *United States v. Winstar Corp.*, 518 U.S. 839, 874–875, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). This Court finds that the only reasonable way to read the two doctrines together is to hold that the unmistakability doctrine applies to require any contractual limitations on a sovereign's powers to be drafted in unmistakable terms, but that under the reserved powers doctrine, a subset of these sovereign powers is so essential that they may never be contractually limited, regardless of the language used. *See also Winstar*, 518 U.S. at 874–889 n. 34, 116 S.Ct. 2432 (addressing action against the federal government rather than a state, but discussing at length the doctrine of unmistakability and indicating there are " 'core governmental powers' that cannot be surrendered under the reserved powers doctrine"). As such, given that the Court has found that the sovereign's discretion to use the eminent domain power is protected under the reserved powers doctrine, the doctrine of unmistakability is simply inapplicable.

Moreover, because the Court concludes that the reserved powers doctrine operates to preclude any contractual limitation on the City's power of eminent domain, the Court declines to consider the arguments raised by the parties regarding whether a valid contract was formed.

Plaintiffs also assert that, as regards to the subset of Plaintiffs whose appeal is pending before the Hawaii Supreme Court, the savings clause of Ordinance 05–001, which repealed Chapter 38, constitutes a bill of attainder. Specifically, Plaintiffs allege that they were singled out for detrimental treatment by the savings cause, because it prohibits them from adding newly qualified applicants to their condemnation proceeding despite the fact that "the City knows full well that the opportunity to add additional qualified applicants is the lifeblood to the survivability of a contested Chapter 38 action." (Pl. Mot. for Summ. J. at 32.)

The United States Constitution provides that "[n]o Bill of Attainder ... shall be passed." U.S. Const. Art. I, § 9, cl. 3. A bill of attainder has been traditionally defined as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The Ninth Circuit has explained that the purpose of the Bill of Attainder Clause is to implement the doctrine of separation of powers, by precluding the legislative branch from usurping the role of the judiciary. *Seariver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir.2002) (quoting *Nixon*, 433 U.S. at 469, 97 S.Ct. 2777) ("Just as Article III confines the Judiciary to the task of adjudicating concrete 'cases or controversies,' so too the Bill of Attainder Clause was found to 'reflect ... the Framers' belief that the Legislative Branch is not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness of, and levying appropriate punishment upon, specific persons.' ").

The elements of a bill of attainder have been set forth by the Ninth Circuit as follows: (1) the statute specifies the affected persons, (2) the statute inflicts punishment, and (3) the punishment is inflicted without a judicial trial. *Id.* at 669 (citing

*Selective Serv. Sys. v. Minn. Pub. Interest Research Group,* 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984)). The Supreme Court has clarified that, to determine whether punishment is inflicted, the court must inquire into (1) whether the challenged statute falls within the historical meaning of punishment, (2) whether the statute can reasonably be said to "further nonpunitive legislative purposes," and (3) whether the legislative record evidences an intent to punish. *Selective Serv. Sys.,* 468 U.S. at 852, 104 S.Ct. 3348. There is a presumption that statutes are constitutional, and thus not bills of attainder. *Id.* (citing *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). As such, "[o]nly the clearest proof suffices to establish the unconstitutionality of a statute as a bill of attainder." *Id.* (citing *Communist Party of United States v. Subversive Activities Control Bd.,* 367 U.S. 1, 83, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961)).

■ The Court does not find that Plaintiffs meet the burden of establishing that the savings clause of Ordinance 05–001 constitutes a bill of attainder. Setting aside the fact that there are no specified affected persons in this statute, the Court simply does not find evidence that the statute inflicts "punishment" as that term is used in the bill of attainder inquiry. First, there is not "the clearest proof"— indeed, the Court does not find any proof—that the legislative record evidences an intent to punish. Plaintiffs argue that intent to punish them can be inferred because the City Council considered alternate drafts that would have preserved their ability to join new applicants to their proceeding, but opted nonetheless to pass the ordinance in its current incarnation. The mere fact alone that the City Council could have chosen to enact an ordinance more favorable to Plaintiffs' interests cannot give rise to an inference of intent to punish. If such were the case,

virtually any choice by the legislature that had a negative impact on the interests of an individual or group would be prima facie evidence of legislative intent to punish. This would turn the presumption against bills of attainder on its head. Moreover, the Court finds that there are plausible non-punitive reasons proffered by the City Council for enacting the ordinance. The City Council based the repeal on its finding that the crisis that lead to the enactment of Chapter 38 had subsided, and the City's practice of condemning land owned by one private landowner and selling it to another no longer served a public purpose. There is nothing illegitimate about this reason for repealing the ordinance, and the Court has no evidence before it that it is a pretext. Thus, the Court cannot accept Plaintiffs' argument that the savings clause constitutes an unconstitutional bill of attainder.

Lastly, Plaintiffs assert that they are entitled to summary on the issue of liability against the City in its official capacity for violating 42 U.S.C. § 1983 by enacting and enforcing Ordinance 05–001. Actions under Section 1983 provide individuals with a remedy against those who have violated their rights under color of state authority. 42 U.S.C. § 1983. Individuals who prove that their federal civil rights have been violated by a municipality may seek, among other things, a declaration that those rights have been violated and an order of the court enjoining defendants from engaging in the illegal practices in the future. *See, e.g., Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In Plaintiffs' case, however, this Court has not found that the City has violated their federal civil rights. As such, Plaintiffs' motion for summary judgment under Section 1983 must be denied.

## CONCLUSION

The Court therefore finds that the City Council acted within its appropriate constitutional and legal limits in repealing Chapter 38. The Plaintiffs' Motion for Summary Judgment is hereby DENIED. The Defendant is directed to file a motion for summary judgment consistent with this opinion.

IT IS SO ORDERED.